UNITED STATES of America, Appellee,

v.

**Benzion GOLOMB,**
**Defendant-Appellant.**

No. 202, Docket 86–1276.

United States Court of Appeals,
Second Circuit.

Submitted Nov. 24, 1986.

Decided Feb. 13, 1987.

Kenneth Roth, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., of counsel), for appellee.

Alan Ellis, Philadelphia, Pa. (Ellis and Newman, P.C., Peter Goldberger and David McGlaughlin, Philadelphia, Pa., Stanley M. Meyer, New York City, of counsel), for defendant-appellant.

Before MANSFIELD,* PRATT and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Benzion Golomb appeals from a resentencing proceeding in the District Court for the Southern District of New York before Judge Mary Johnson Lowe in which he was sentenced to ten consecutive terms on twelve counts of an indictment, for a total sentence of 24 years. We affirm the consecutive sentences, except that we vacate the convictions and sentences relating to Counts Two and Three. We also direct a minor modification in the restitution order.

## BACKGROUND

Following a jury trial before Judge Lowe, Benzion Golomb was convicted on twelve counts of an indictment charging a series of property crimes. It was Golomb's first conviction. Count One charged a conspiracy to commit various substantive offenses relating to Golomb's fencing operation. Counts Two and Three charged receipt of stolen United States Treasury checks. Count Four charged receipt in interstate commerce of the proceeds of burglaries. Counts Five and Six charged mail fraud based on a scheme to defraud the New York State Department of Labor. Counts Seven through Eleven charged interstate transportation of checks which had been stolen and forged. Four of these stolen checks were drawn on the account of the Mariners' Family Home in Staten Island, a residence for the widows and orphans of seamen. Count Twelve charged use of a stolen credit card.

On July 3, 1984, Judge Lowe sentenced Golomb to various terms of imprisonment on the twelve counts and then, without explanation, ordered that all but one count were to run consecutively, for a total prison term of 26 years. Judge Lowe also fined Golomb $10,000 and ordered restitution to certain victims in the amount of approximately $102,000.

On January 28, 1985, this court (Newman, J.) affirmed the convictions, but vacated Golomb's sentence. The case was remanded with instructions to reconsider "the extent to which the sentences should run consecutively and to provide an adequate explanation for the decision reached upon such reconsideration." *United States v. Golomb*, 754 F.2d 86, 91 (2d Cir. 1985). The court was guided in its decision by the new sentencing statute, 18 U.S.C. § 3553 (which was added to the criminal code by the Comprehensive Crime Control Act of 1984, Pub. L. No. 98–473, and takes effect on November 1, 1987), which it found to be a pertinent "expression of congressional sentiment." 754 F.2d at 90.

---

* Judge Mansfield participated in oral argument in this case and voted before his death on January 7, 1987 in favor of the disposition reached in this opinion.

Under this statute, federal district judges will be required to provide an explanation for every sentence they impose. *See* 18 U.S.C. § 3553(c). Noting that the eleven consecutive sentences imposed an unusually long term upon a "first offender," the court held that "[u]nder all the circumstances, we believe this is that rare case where even under existing law a statement of reasons is required." *Id.* at 91. The opinion also specifically questioned the propriety of imposing consecutive sentences on the two counts involving sales of Treasury checks to Golomb by federal agents on consecutive days.

On remand, Judge Lowe essentially reimposed the original sentence, by resentencing Golomb as follows: four years on Count 1; two years each on Counts 2 and 3; five years on Count 4; two years each on Counts 5 through 11; and one year on Count 12. The sentences on Counts 5 and 6 were concurrent, as they were in the original sentence. The only change from the first proceeding was that the sentences on Counts 2 and 3 (receipt of stolen Treasury checks) were to be served concurrently, thereby reducing the sentence by two years. Judge Lowe decided to run these two sentences concurrently out of "deference to Judge Newman's opinion." All other sentences were still consecutive, for a total term of 24 years.

Golomb now contends that even though Judge Lowe provided a comprehensive statement of reasons for the resentencing decision, she nevertheless failed to comply with this court's instructions. He also raises several other claims regarding the propriety of his sentence, only some of which merit discussion.

## I. The resentencing proceeding

■ We are satisfied that Judge Lowe complied with this court's direction to reconsider and explain Golomb's lengthy sentence. Although Golomb contends that the resentencing proceeding was merely a replay of the original, Judge Lowe in fact did much more than repeat her reasons for imposing the various individual sentences.

Following Judge Newman's suggestion, she explained her imposition of so many consecutive terms by reference to the factors set forth in 18 U.S.C. § 3553(a). In particular, Judge Lowe observed:

[T]he defendant was convicted of multiple, serious, independent felonies that victimized every element in our society, including federal and state governments, charitable and business institutions and private citizens ... Mr. Golomb has preyed on society for years and now seeks to avoid responsibility for his antisocial conduct by arguing that all of the independent acts he committed were part of a single conspiracy.

In response to this court's caution that there is a difference between recidivists and first offenders like Golomb, Judge Lowe emphasized that Golomb was a first offender in name only. His attitude and behavior were far more similar to those of the typical repeat offender. For example, on various occasions when law enforcement officials seemed to be on his trail, Golomb concocted elaborate schemes to evade detection and then redoubled his criminal efforts. Judge Lowe thus concluded:

The simple fact that this defendant was able to continue his victimizing of other persons without interruption by either the police or the court, causing him to effectively convert a way of crime into a business of crime, should not inure to his benefit. His repeated criminal conduct has shown his total contempt of the rules by which we govern ourselves.

■ Golomb also argues that Judge Lowe improperly based his sentence in part on two prior arrests which had resulted in acquittals. One was a 1969 arrest for failing to report for induction; the second was a 1979 arrest for receipt of stolen property. Judge Lowe did observe that "these arrests may be considered on sentencing," but the resentencing transcript does not support Golomb's contention that his sentence was in any way "based" on these two arrests. Judge Lowe mentioned them more for the sake of providing a complete background history before stating, "of more material

import, however, is that at sentencing, the government informed this court that in addition to the stolen property that was taken during the seven New Jersey home burglaries, this defendant purchased stolen property from a series of burglaries in New York."

A sentencing judge may rely on *evidence* of crimes of which a defendant has been acquitted. *See United States v. Roland,* 748 F.2d 1321, 1327 (2d Cir.1984); *cf. United States v. Ortiz,* 742 F.2d 712, 714 n. 3 (2d Cir.) (sentencing judge may consider prior arrest that led to dismissal as evidence of defendant's background), *cert. denied,* 469 U.S. 1075, 105 S.Ct. 573, 83 L.Ed.2d 513 (1984). Any error which Judge Lowe might have committed by stating that arrests alone could be considered on sentencing must be viewed as harmless in light of the overwhelming evidence of Golomb's extensive criminal activities.

In its prior opinion, this court did not reach Golomb's claim that the sentence violated the eighth amendment because it was grossly disproportionate to the offense and to sentences imposed in equivalent cases. *See Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Golomb now renews this claim.

First of all, it should be noted that all the individual sentences were well within—and in most cases much less than—the statutory maximums. Indeed, if the maximum sentences were aggregated, Golomb could have received a 105 year sentence, compared to the 24 years he actually received. Lengthy consecutive sentences have been upheld as constitutional in several previous cases. *Carmona v. Ward,* 576 F.2d 405, 430–31 (2d Cir.1978) (Oakes, J., dissenting) (collecting cases), *cert. denied,* 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 58 (1979); *see also United States v. Bonnet,* 769 F.2d 68, 71 (2d Cir.1985). As Judge Newman pointed out in the first *Golomb* opinion, "it would take an extraordinary set of circumstances to demonstrate that the cumulation of valid sentences for distinct offenses constitutes cruel and unusual punishment." 754 F.2d at 90.

No such extraordinary circumstances are present in this case. Golomb was found to have engaged in a series of independent criminal ventures, and to have procured the assistance of many other individuals for his enterprises. Judge Lowe further noted that Golomb was unrepentant and was likely to continue in his ways unless he was incarcerated for a substantial period. Moreover, even though the actual sentence is quite long, Golomb may well be released on parole after serving only a third of it. A reviewing court may take parole expectations into account when evaluating the severity of a sentence, *see Ortiz, supra,* 742 F.2d at 715. For all these reasons, Golomb's claim that his sentence is so disproportionate as to constitute cruel and unusual punishment must fail.

Finally, Golomb challenges the restitution order which directed him to compensate several of the burglary victims in the amount of approximately $20,000, and to pay the Mariners' Family Home $80,909, the exact amount of the three stolen Mariners' checks which were cashed by Golomb. He argues that in ordering such restitution, Judge Lowe failed to consider the factors listed in 18 U.S.C. § 3580(a), and failed to account for the possibility of third-party reimbursement to the Mariners' Family Home, as required by 18 U.S.C. § 3579(e)(1).

Section 3580(a) provides:
The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

The court is not required to make explicit findings on the record with respect to each of these factors. *United States v. Atkinson,* 788 F.2d 900, 902 (2d Cir.1986). In *Atkinson,* this court vacated a restitution order because the district judge had ex-

pressly declined to consider reducing the amount of restitution in light of the defendant's indigency. In the present case, by contrast, there is no indication that Judge Lowe failed to consider the statutory factors. Indeed, the fact that she did not order full restitution to all of Golomb's victims suggests that she considered factors other than the amount of victim loss in fixing the amount of compensation.

Golomb also contends that he cannot be required to compensate the Mariners' Family Home because Chemical Bank is likely to reimburse it for its losses. The topic of third-party reimbursement is addressed in 18 U.S.C. § 3579(e)(1) which provides, in part:

> The court shall not impose restitution with respect to a loss for which the victim has received or is to receive compensation, except that the court may, in the interest of justice, order restitution to any person who has compensated the victim for such loss to the extent that such person paid the compensation.

■ During the resentencing proceeding, Judge Lowe acknowledged the possibility that the Mariners' Home would soon be reimbursed by Chemical Bank, but she neglected to account for this contingency in the final order of judgment. This oversight does not, as Golomb urges, require us to overturn the restitution order. Rather, the restitution order should be modified to provide that if the Mariners' Home has been compensated in full or in part by Chemical Bank, then Golomb shall pay Chemical Bank the amount Chemical paid the Mariners' Home (not to exceed $80,-909).

## II. *The convictions for knowing receipt of stolen government property*

On this second appeal, Golomb raises a troubling issue for the first time. He asserts that his convictions on Counts Two and Three, which charged receipt of stolen Treasury checks, must be vacated because the checks which Golomb received were not, in fact, stolen.

Golomb purchased United States Treasury checks on two consecutive days from a man who, unbeknownst to Golomb, was a special agent of the United States Secret Service. Golomb was led to believe the checks had been stolen. In fact, according to the agent's own trial testimony, the checks in question were "spurious," or "bait" checks. Such checks display a fictitious name and address and are printed by the government specifically for use in investigations. Thus, the checks Golomb purchased were not, nor had they ever been, stolen.

Counts Two and Three of the indictment charged Golomb with violating 18 U.S. C. § 641, which authorizes punishment for a person who "receives, conceals, or retains [money, property or records belonging to the United States] with intent to convert it to his use or gain, *knowing it to have been embezzled, stolen, purloined or converted"* (emphasis added). Golomb now argues that these counts should not have gone to the jury, because Golomb could not have *known* that the checks were stolen when they were *not* stolen. The government contends that Golomb was properly convicted under § 641 because he believed the checks were stolen, and that the statute contains no requirement that the checks be stolen in fact.

■ We agree with Golomb's interpretation of § 641's knowledge requirement. Knowledge and belief are very different mental states; knowledge implies a much higher degree of certainty. Golomb may very well have believed the checks were stolen, but in our view, § 641 cannot be interpreted to support a conviction when the property at issue was not stolen. The legislative history of § 641 suggests that the statute was intended to codify common-law property crimes. *See Morissette v. United States,* 342 U.S. 246, 265–66 & n. 28, 72 S.Ct. 240, 250–51 & n. 28, 96 L.Ed. 288 (1952). A defendant cannot be convicted of the common-law crime of receiving stolen goods if the goods have lost their stolen character prior to receipt. This occurs if "before the stolen goods reached

the receiver, the goods had been recovered by their owner or his agent, including the police." *United States v. Muzii*, 676 F.2d 919, 923 (2d Cir.), *cert. denied*, 459 U.S. 863, 103 S.Ct. 139, 74 L.Ed.2d 118 (1982); *accord United States v. Dove*, 629 F.2d 325 (4th Cir.1980); *United States v. Monasterski*, 567 F.2d 677 (6th Cir.1977); *United States v. Cawley*, 255 F.2d 338 (3d Cir. 1958). It follows that if the property at issue had *never* been stolen, there can be no conviction for receipt of stolen goods, under either the common-law or § 641.

The only question remaining is whether Golomb's failure to raise this claim, either at trial or on his first appeal, constitutes a waiver, or whether submitting these counts to the jury was plain error, thus enabling us to consider the issue at this late stage, *see* Fed.R.Crim.P. 52(b).

In general, failure to instruct the jury on an essential element of the offense constitutes plain error. *See, e.g., United States v. Walsh*, 700 F.2d 846, 856 n. 6 (2d Cir.) (citing *Screws v. United States*, 325 U.S. 91, 107, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945)), *cert. denied*, 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983). It has also been held that the government's failure to prove an element of the offense is plain error. *See Strickland v. United States*, 339 F.2d 866, 868 (10th Cir.1965); *see also Slater v. United States*, 562 F.2d 58, 59 n. 1 (1st Cir.1976).

█ In Golomb's case, the two counts of receiving stolen United States property were submitted to the jury despite a total absence of proof of one of the elements of the crime, i.e., the stolen character of the checks. Submitting these counts to the jury certainly constituted plain error within the meaning of Fed.R.Crim.P. 52(b) and the relevant case law, so that Golomb's failure to object until this second appeal is not fatal to his claim. Accordingly, we vacate Golomb's convictions and sentences on Counts Two and Three and order that those charges be dismissed. The sentences on all the other counts are affirmed and the case is remanded with instructions to dismiss Counts Two and Three, and to modify the restitution order by providing that if the Mariners' Home has been compensated in full or in part by Chemical Bank, then Golomb shall pay Chemical Bank the amount Chemical paid the Mariners' Home (not to exceed $80,909).