In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-3506

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

CORREY JEFFERSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02-CR-21—**Charles N. Clevert**, *Judge*.

ARGUED APRIL 3, 2003—DECIDED JULY 2, 2003

Before CUDAHY, MANION and KANNE, *Circuit Judges*.

CUDAHY, *Circuit Judge* Correy Jefferson bought two semi-automatic handguns, one of which he later gave to his brother, who is a convicted felon, allegedly for safe-keeping while Jefferson was out of town. For this transfer, Jefferson was convicted by a jury of knowingly delivering a firearm to a felon in violation of 18 U.S.C. § 922(d) and sentenced to 21 months in prison. He appeals, claiming that the jury instructions misconstrued the language of § 922(d), which he argues does not encompass his actions. We affirm his conviction.

I.

In May 2001, Correy Jefferson legally purchased two Ruger semi-automatic handguns from Buttrum's Sporting Goods in Glendale, Wisconsin, a Milwaukee suburb. One of these two guns later ended up in the possession of Correy's brother Melvin, who is a convicted felon.[1] Using the handgun's serial number, the police traced the gun back to Correy Jefferson, and Correy was arrested on December 2, 2001. Everything we know about what happened with the gun comes from Correy's statement to the police. According to the statement, Correy and Melvin had gone to Buttrum's together to buy the two guns, both of which were for Correy. Correy knew that his brother, as a felon, could not legally purchase a firearm. About a week after the purchase, Correy gave one of the guns to Melvin so that Melvin could keep it in Melvin's safe while Correy was out of town for about a month. The gun remained with Melvin after Correy returned to Milwaukee and then for the duration of another out-of-town trip. Correy stated that the last time he saw the gun was when Melvin placed it in the safe, and Correy admitted that he did not know the combination to Melvin's safe. Correy was indicted on one count of delivery of a firearm to a felon, in violation of 18 U.S.C. § 922(d).

Title 18 U.S.C. § 922(d) makes it "unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing . . . that such person" is a felon. Before trial, the government proposed a jury instruction defining "dispose of": "To dispose of an object is to transfer it to the control of another." The government argued

---

[1] As a result of his present receipt of the gun, Melvin Jefferson was eventually convicted of being a felon in possession of a firearm in violation of 28 U.S.C. § 922(a) and sentenced to 91 months in prison.

that this broad definition of "dispose of" was supported by two dictionary sources as well as *Huddleston v. United States*, 415 U.S. 814, 821 (1974), in which the Supreme Court held that a pawnbroker "disposes of" a firearm when he allows a felon to redeem it. Jefferson vigorously opposed this instruction. Jefferson disputed the validity of the selected dictionary definitions and argued that such a broad definition would constructively amend the indictment. The district court, citing *United States v. Monteleone*, 77 F.3d 1086, 1092 (8th Cir. 1996), gave its own jury instruction broadly defining "dispose of": "The term 'dispose of' as used in the indictment means to transfer a firearm so that the transferee acquires possession of the firearm." A jury convicted Correy Jefferson on May 13, 2002, and he was sentenced to 21 months in prison.

## II.

We review a district court's decisions with respect to jury instructions for abuse of discretion, approving on appeal instructions that "fairly and accurately" summarize the law and have support in the record. *United States v. Hendricks*, 319 F.3d 993, 1004 (7th Cir. 2003). However, we determine de novo whether an instruction fairly and accurately summarizes the law or is legally erroneous. *United States v. Smith*, 308 F.3d 726, 740 (7th Cir. 2002); *Savino v. C.P. Hall Co.*, 199 F.3d 925, 934 (7th Cir. 1999).

Jefferson presents the principal subject in dispute, the meaning of "dispose of," in three ways. First, he argues that the jury instruction as given constituted an improper constructive amendment of the indictment. Second, he argues that the government did not present sufficient evidence to support the jury's verdict. Finally, he alleges that the jury instruction itself was not a proper statement of the law.

The constructive amendment argument does not get Jefferson very far. "[A] constructive amendment occurs where proof at trial goes beyond the parameters of the indictment in that it establishes offenses different from or in addition to those charged by the grand jury. Such error . . . which in a jury trial can also be generated or exacerbated by faulty instructions, violates the Fifth Amendment since the Grand Jury Clause limits the available bases for conviction to those contained in the indictment." *United States v. Pigee*, 197 F.3d 879, 886 (7th Cir. 1999) (internal quotation marks omitted). As the government agrees, a constructive amendment can be made either through the evidence or through the jury instructions.[2]

Jefferson argues that the definition of "dispose of" in the district court's jury instruction was so broad that he was effectively convicted of aiding and abetting his brother's possession in violation of 18 U.S.C. § 922*(g)*, rather than of delivering a firearm to a felon in violation of § 922*(d)*, the offense for which he was indicted. Ultimately, this argument only begs the question of the proper interpretation of § 922(d). If the district court's instruction was legally correct (i.e., if § 922*(d) does* cover Jefferson's actions), there is no reason to believe that Jefferson was improperly convicted of aiding and abetting his

---

[2] An example of a constructive amendment case, cited by Jefferson but not on point, is *United States v. Stirone*, 361 U.S. 212, 215-16 (1960). In *Stirone*, the defendant was indicted for obstructing interstate shipments of sand, but at trial the government also proffered evidence that the defendant had obstructed steel shipments. The jury was instructed that it could convict based on either sand or steel. The Supreme Court held that the indictment had been amended by the addition of the obstruction of steel language in the jury instructions and reversed the conviction.

brother's violation of § 922(g). In fact, the government expressly rejected the district court's proposal to include jury instructions on aiding and abetting. Trial Tr. at 61 (May 13, 2002). Jefferson's sufficiency-of-the-evidence argument similarly fails if the district court's jury instruction was accurate. If the jury instruction was appropriate, there was clearly sufficient evidence to support the jury's verdict. Thus, we move on to the jury instruction itself.

The core issue is the proper interpretation of "dispose of." Jefferson's argument here is that the temporary transfer of a gun for safekeeping, the extent of his admission, is not encompassed by the statutory language. The district court's instruction was based on the instruction given in *Monteleone*, 77 F.3d at 1092. Salvatore Monteleone had given his gun for repair to a half-brother whom he knew to be a felon, in a temporary transfer, also similar to the one before us inasmuch as it was noncommercial. The district court in *Monteleone* provided the following jury instruction: "[T]he term 'dispose of' as used in the indictment means to transfer a firearm so that the transferee acquires possession of the firearm." *Id*. On review, the Eighth Circuit noted, while reversing the conviction on other grounds: "This definition of 'dispose' is in accord with the Supreme Court's decision in *Huddleston v. United States*, 415 U.S. 814 (1974). There, in considering the very language before us in this appeal, the Court determined that a disposal occurs when a person 'comes into possession, control, or power of disposal of a firearm.'" *Monteleone*, 77 F.3d at 1092 (quoting *Huddleston*, 415 U.S. at 823).

While we agree with the general approach of *Monteleone*, its holding is not as clearly applicable here as the government would have us believe. First, since the conviction of the defendant in *Monteleone* was reversed on other grounds, the Eighth Circuit's treatment of the jury

instruction may be dictum. Second, *Monteleone* 's reliance on *Huddleston* is questionable. In *Huddleston*, the Supreme Court considered whether a felon redeeming a firearm from a pawnshop was "acquiring" the firearm in violation of § 922(a)(6). William Huddleston had argued that a redemptive transaction was not a "sale" from the perspective of the pawnbroker, and so could not be an "acquisition" with respect to the person redeeming. The Court disagreed, holding that guns can be acquired not only through sales but through "other dispositions." 18 U.S.C. § 922(a)(6). The Court, citing laws regulating the firearms transactions of pawnbrokers, concluded that pawnbrokers do "dispose" of firearms when they allow them to be redeemed by their patrons, even if the redemption does not constitute a sale.

The problem with relying on *Huddleston* here is that pawnshop redemptions are both commercial and final, two qualities claimed to have been absent in Jefferson's transfer to his brother. Further, the *Huddleston* court relied on both these aspects of pawnshop redemptions in coming to its conclusion that "disposition" should be read somewhat broadly. And common definitions of the word "disposal" also contain the element of finality. *See* Merriam-Webster Dictionary (1990) (disposal: "to transfer to the control of another; to get rid of; to deal with *conclusively* ") (emphasis added). Further, the principle of ejusdem generis would suggest that § 922(d) only covers dispositions that are similar to sales, perhaps in their commercial and final qualities. Reading § 922(d) to cover noncommercial transactions may even yield a Commerce Clause challenge. *But see United States v. Lemons*, 302 F.3d 769, 772 (7th Cir. 2002) (holding that § 922(g)(1) is within congressional Commerce Clause authority).

Legislative history pulls in both directions. The strongest evidence for the government comes from a source cited by the *Huddleston* court. According to *Huddleston*, the term

"dispose" was first used in the National Firearms Act, Pub. L. No. 73-474, § 1(k), 48 Stat. 1236, 1237 (1934), which defined "to transfer" as "to sell, assign, pledge, lease, loan, give away, or otherwise dispose of." If we derived our construction from the 1934 law, therefore, disposal would encompass a wide range of transfers, both temporary and permanent (e.g., sell or lease) and both commercial and noncommercial (e.g., sell or give away). On the other hand, we may also consider the more recent history of § 922(d). Prior to 1986, § 922 only forbade sales and other dispositions to felons by licensed gun dealers. H.R. Rep. No. 99-495 at 15, *reprinted in* 1986 U.S.C.C.A.N. 1327, 1341. The Firearms Owners' Protection Act, § 102(5), Pub. L. No. 99-308, 100 Stat. 449, 451 (1986), broadened the statutory coverage to "close an existing loophole whereby qualified purchasers have acquired firearms from licensees on behalf of prohibited persons." H.R. Rep. No. 99-495 at 17, *reprinted in* 1986 U.S.C.C.A.N. 1327, 1343. The new § 922(d) "extend[ed] the prohibition which [applied] only to Federal firearms licensees to all persons who transfer a firearm." *Id.* at 22, 1348. There are two ways to interpret this broadening of the law. The first possible interpretation is that the new language intends to forbid, for non-dealers, only actions that dealers usually engage in—commercial, permanent transfers. Or we can read the change to include under § 922(d) the wider range of transfers that a non-dealer might make (including gratuitous, temporary transfers). After all, there is no compelling reason to believe that, when the class of persons covered is broadened, the meaning of "sell or otherwise dispose of" should continue to reflect only the sorts of dispositions associated with the former and narrower class of persons covered.

Although we must keep in mind that ambiguity in criminal statutes should generally be resolved in favor of lenity, *United States v. Lange*, 312 F.3d 263, 266 (7th Cir.

2002), this maxim must of course yield to the paramount consideration—to follow congressional intent. Here, our best evidence of congressional intent is the legislative history cited above, which indicates that Congress wanted to broaden the reach of the gun control statute to cover a wider range of firearms transfers. Given the potential breadth of the word "disposal," as contained in the 1934 National Firearms Act, we believe that Congress must have been aware that non-dealers may be equally likely to engage in gratuitous, temporary transfers (say, to family members or friends) as to engage in permanent, commercial transfers, and must have found both types of transfers potentially dangerous and undesirable. To exclude such gratuitous, temporary transfers from the reach of § 922(d) also ill-serves the purposes of the statute— Congress presumably did not want guns in the hands of felons, whether on a temporary or permanent basis, whether for free or for payment. If Congress really wanted to strengthen and broaden the reach of the firearms statute, it would not have distinguished between transfers made at arm's length for consideration and gratuitous transfers to friends or family members. We are not aware of a persuasive reason to make such a distinction.

The case at hand becomes even clearer when we note that Congress expressly had in mind, in broadening § 922(d), straw purchases "whereby qualified purchasers have acquired firearms from licensees on behalf of prohibited persons." H.R. Rep. No. 99-495 at 17, *reprinted in* 1986 U.S.C.C.A.N. 1327, 1343. After all, Jefferson's own argument is that the jury instruction as given broadened his indictment "to include . . . aiding and abetting a prohibited person in the possession of a firearm" and that the jury convicted him based on that conduct. Jefferson Br. at 9-16. As the congressional history shows, such aiding and abetting, when it amounts to a straw purchase, falls

precisely within the range of activities prohibited by § 922(d). Given the substantial duration of Jefferson's transfer to his brother and his brother's undisputed exclusive control over the firearm, we see no problem with the district courts' definition of "dispose of," "to transfer a firearm so that the transferee acquires possession of the firearm."

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—7-2-03