# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-1335

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LEE GRAHAM,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 103—**David H. Coar**, *Judge.*

ARGUED SEPTEMBER 22, 2004—DECIDED DECEMBER 13, 2005

Before COFFEY, WILLIAMS, and SYKES, *Circuit Judges.*

COFFEY, *Circuit Judge.* In 2003, Lee Graham was charged with two counts of assaulting federal officers in violation of 18 U.S.C. § 111(a). A jury found the defendant not guilty on Count I and guilty on Count II. The defendant claims that his conviction on Count II should be reversed because the trial judge incorrectly defined the term "intentionally" in a supplemental jury instruction when he stated that in order to find that the defendant acted intentionally under § 111 they must find that the defendant made contact with one or more of the federal officers "deliberately and not by accident or mistake." We affirm.

## I. BACKGROUND

On January 29, 2003, four Deputy United States Marshals—Ambrose, Block, O'Malley, and Andrews—executed an arrest warrant for Edward Davis for a parole violation at the home of the defendant, Lee Graham, and his wife Channella.[1] Prior to executing the warrant, the deputies were informed that Davis was known to act belligerently and would likely attempt to evade arrest. Accordingly, they proceeded to the Graham's apartment wearing body gear (labeled "POLICE") and carrying guns, OC spray ("pepper spray"), radios, handcuffs, and batons.

When the deputies arrived at the Grahams' apartment complex, they encountered the defendant in the vestibule of the building, waiting to be picked up for work. During this encounter, one of the deputies asked the defendant if he knew Channella Graham and the defendant answered in the affirmative, stating that Channella was his wife. The deputies then asked the defendant if they could enter his apartment to speak with Channella. The defendant agreed and offered to get Channella. He then lead three of the deputies—Deputy Ambrose waited behind the building in case Davis tried to escape—to his apartment and asked them to wait in the entryway while he notified Channella that they wished to speak with her. The defendant then went to a back bedroom in the apartment to get Channella.

Within minutes, the defendant returned from the bedroom with Channella who, according to the deputies, appeared agitated and immediately began "yelling" and

---

[1] In October of 2002, Davis, Channella's brother, had been released on parole to reside in the Graham's apartment at 9130 Bennett in Skokie, Illinois.

"cursing" at them.[2] Deputy Block stated that while Channella was "screaming" at the deputies, he tried to explain to her that they were looking for Davis to execute an arrest warrant. Channella responded that Davis was not there and that she had no idea where to find him. Deputy Block then informed the Grahams that the deputies needed to search their home in order to verify that Davis was not on the premises. In response, the Grahams demanded to see a warrant. Block did not have the arrest warrant on his person, as he was not obligated to carry one, even though one had been obtained.[3]

Because the deputies did not produce a warrant, the Grahams continued to argue with the deputies and refused to allow them to search their home. Deputy Block testified that at some point during this argument, the defendant put his "two hands to [Deputy O'Malley's] chest" and told him "he wasn't coming in."[4] At this time, Deputy O'Malley ordered that the Grahams be handcuffed for "officer safety reasons."

Channella allowed the deputies to cuff her without incident, but the defendant refused to oblige. According to Deputy Ambrose, when he and O'Malley tried to approach the defendant to cuff him, the defendant threw a

---

[2] Channella, on the other hand, contradicted the deputies' testimony, stating that she "hadn't raised [her] voice because the children were sleeping" and that she had had to ask the deputies to "quiet down" because they were "yelling and screaming."

[3] Deputy Block testified that it was not his practice to carry arrest warrants with him when he arrested individuals as he was not legally required to do so and because, in his experience, people often confuse arrest warrants with search warrants.

[4] The defendant denied that he had "ever put his hands" on any of the deputies.

punch at Ambrose, striking him in the forehead. Deputies O'Malley and Ambrose then proceeded to "wrestle" the defendant to the ground, but were unable to put the cuffs on him. At this time, the defendant struck Ambrose "in the side of the head with his elbow." Deputy Ambrose responded, punching the defendant twice in the face. According to Ambrose, this action had no effect on the defendant and as a result he found it necessary to spray the defendant with pepper spray in hopes of taking control of him. Ambrose went on to state that even after being sprayed, the defendant continued to "lunge" at the deputies, so he sprayed him a second time. At this point, the defendant retreated to a back bedroom; shortly thereafter, he emerged from the bedroom screaming that his eyes were burning. At this time, the deputies cuffed the defendant and proceeded to rinse his eyes. After securing the defendant, the deputies commenced their search of the Grahams' apartment and found no trace of Davis.[5]

Thereafter, on February 24, 2003, Graham was indicted on two counts of assaulting federal officers in violation of 18 U.S.C. § 111(a),[6] which states in pertinent part:

"Whoever . . . (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [officer of the United States] while engaged in or on account of the performance of official duties . . . shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined

---

[5] The deputies later found out that Davis was staying with his wife in Texas, where he was apprehended "a couple of days" after this incident.

[6] The defendant was charged with the assault of Deputy O'Malley on Count I and the assault of Deputy Ambrose on Count II.

under this title or imprisoned not more than 8 years, or both.”

The indictment charged the defendant with “more than simple assault” on both counts because the government alleged that he made physical contact with both officers, but he did not use a deadly or dangerous weapon or inflict bodily injury upon them.[7]

After the presentation of the evidence at Graham's trial, the court instructed the jury that the word “forcibly” as used in § 111(a) was defined as follows: “To have acted ‘forcibly’ the defendant must have intentionally struck, pushed or intentionally have made physical contact with one or more of the Deputy Marshals.” On the second day of deliberations, the jury asked the trial judge to define the term “intentionally” as used in the jury instructions. Out of the jury's presence, the trial judge met with the attorneys and asked if they had any suggestions as to how he should respond to the jury's inquiry. There, he stated, “I probably should not have used the word ‘intentional’ [to define the term ‘forcibly’] because that word's not used in the statute. It's not an element. Knowingly would have been the appropriate word, but having used the word ‘intentional,’ I think the jury may need some help.” Because he believed that knowingly was the appropriate term, the judge modified the Seventh Circuit Criminal Pattern Jury Instruction defining the term “knowingly” to create a supplemental jury instruction that defined the term “intentionally” to the jury.[8] The supplemental instruction read:

---

[7] *See United States v. Hathaway*, 318 F.3d 1001, 1008-09 (10th Cir. 2003) (more than simple assault “under § 111(a) includes any assault that involves actual physical contact . . . but does not involve a deadly or dangerous weapon or bodily injury.”).

[8] Section 4.06 of the Pattern Criminal Federal Jury Instruc-
(continued...)

"When the word 'intentionally' is used in the instruction defining 'forcibly,' it means that if the defendant, Lee Graham, struck, pushed, or made physical contact with one or more of the deputy marshals, the push, strike or physical contact must have been done deliberately and not by accident or mistake, in order for his acts to have been done forcibly."

The defense objected to the trial court's supplemental instruction, both before it was given to the jury and in a post-trial motion, arguing that it did not adequately define the term "intentionally."

Graham was acquitted on Count I (assault of O'Malley), but convicted on Count II (assault of Ambrose). On December 9, 2003, the defendant filed a timely motion for a new trial and a motion for judgment of acquittal on Count II. The trial court denied the motions and entered judgment on January 26, 2004. The defendant appealed the judgment on February 6, 2004, claiming that the district court, in his response to the jury's question, improperly defined the word "intentionally" and that this jury instruction affected the verdict on Count II.

## II. ANALYSIS

The only issue the defendant raises on appeal is whether the trial court erred when he instructed the jury that the word "intentionally," as used in the jury instruction defining the term "forcibly," meant "that if the defendant, Lee Graham, struck, pushed, or made physical contact with one

---

[8] (...continued)
tions for the Seventh Circuit defines "knowingly" as follows:

When the word "knowingly" . . . is used in these instructions, it means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident . . . ."

or more of the deputy marshals, the push, strike or physical contact must have been done deliberately and not by accident or mistake." According to the defendant, the trial court's definition of the term "intentionally" improperly led the jury to believe that if they found that the defendant did not act by "accident or mistake," he must have acted "intentionally," thereby allowing them to ignore the specific intent element of the statute. We review a district court's decision with respect to jury instructions under the abuse of discretion standard. *United States v. Jefferson*, 334 F.3d 670, 672 (7th Cir. 2003).

A.  *18 U.S.C. § 111 Intent Requirement*

Initially, let us make clear that the defendant's assertion and belief that an assault on a federal officer under 18 U.S.C. § 111 requires a showing of specific intent is in error. In *United States v. Woody*, 55 F.3d 1257, 1265-66 (7th Cir. 1995), we held that § 111 is *not* a specific intent crime. "The government may establish proof of a forcible assault by demonstrating that the defendant made 'such a threat or display of physical aggression toward the officers as to inspire fear of pain, bodily harm, or death.' " *Id.* at 1266 (citing *United States v. Schrader*, 10 F.3d 1345, 1348 (8th Cir. 1993) (quoting *United States v. Walker*, 835 F.2d 983, 987 (2d Cir. 1987)). Moreover, in *United States v. Ricketts*, 146 F.3d 492, 497 (7th Cir. 1998), we revisited our holding in *Woody* that § 111 is a general intent crime and, after reviewing the law of numerous circuits,[9] we declined to overrule *Woody*. In spite of our holdings in *Woody* and

---

[9]  *See United States v. Ettinger*, 344 F.3d 1149 (11th Cir. 2003); *United States v. Kleinbart*, 27 F.3d 586 (D.C. Cir. 1994); *United States v. Jim*, 865 F.2d 211 (9th Cir. 1989); *United States v. Hill*, 526 F.2d 1019, 1027 (10th Cir. 1975), *cert. denied*, 425 U.S. 940 (1976).

*Ricketts*, the defendant for reasons unexplained relies on *United States v. Green*, 927 F.2d 1005 (7th Cir. 1991), for his position that § 111 is a specific intent crime.[10] However, our opinions in *Woody* and *Ricketts*—which neither the defendant nor the government discussed in their respective briefs—effectively overruled *Green* on the scienter element of § 111 and therefore the defendant's assertion that § 111 is a specific intent crime is in error. *See Woody*, 55 F.3d at 1266; *Ricketts*, 146 F.3d at 497.

## B.  *Jury Instructions*

This court will affirm the jury's decision if "the jury instructions fairly and accurately summarize[d] the law and [had] support in the record." *United States v. Aldaco*, 201 F.3d 979, 989 (7th Cir. 2000). "We have held that the district court retains broad discretion in deciding how to respond to a question propounded from the jury and that the court has an obligation to dispel any confusion quickly and with concrete accuracy." *United States v. Sims*, 329 F.3d 937, 943 (7th Cir. 2003) (citing *United States v. Young*, 316 F.3d 649, 661 (7th Cir. 2002)). When reviewing a supplemental instruction this court must apply a three-part test, asking: "(1) whether the instruction as a whole fairly and adequately treated the issue; (2) whether the supplemental instruction was a correct statement of law; and (3) whether the district court answered the jury's question specifically." *United States v. Sims*, 329 F.3d 937, 943 (7th Cir. 2003).

The trial judge initially instructed the jury that, "[t]o have acted 'forcibly' [within the meaning of § 111] the

---

[10] In *Green*, this court held that an assault on a federal official is a "specific intent crime, requiring proof that the defendant intended to frighten or inflict harm upon his victim." 927 F.2d at 1008.

defendant must have intentionally struck, pushed or intentionally have made physical contact with one or more of the Deputy Marshals." On the second day of deliberations, the jury asked the trial court to define the term "intentionally" as it was used in the jury instructions. When presented with this question, the trial judge recognized that the term intentional does not appear in the statute and he was of the opinion that he should not have used the term. Rather, he believed that he should have used the term "knowingly" to define "forcibly" because it properly reflected the mental state required for a conviction under § 111. Therefore, in order to correct his error, the trial judge created a supplemental jury instruction defining the term "intentionally" that was consistent with the Seventh Circuit Criminal Pattern Jury Instruction's definition of the term "knowingly." The supplemental instruction read:

> "When the word 'intentionally' is used in the instruction defining 'forcibly,' it means that if the defendant, Lee Graham, struck, pushed, or made physical contact with one or more of the deputy marshals, the push, strike or physical contact must have been done deliberately and not by accident or mistake, in order for his acts to have been done forcibly."

Under the three-part test of *Sims*, we initially address whether this supplemental jury instruction fairly and adequately treated the issue. The jury asked the trial court to define the term "intentionally" as it was used in its initial jury instruction defining the term "forcibly" under the statute. Recognizing that the term "intentionally" was not consistent with the language of the statute or the scienter element of § 111, the trial court believed the use of the term "intentionally" in the jury instructions was in error. Because, as discussed *supra*, § 111 is a general intent crime which requires only that the defendant acted with knowledge of his conduct, we agree with the trial court that

its initial instruction to the jury was in error. *Woody*, 55 F.3d at 1265-66. However*,* we are also of the opinion that the trial court's supplemental instruction corrected the error.

To establish that a defendant acted with knowledge, the prosecution must show that "the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident . . . ." 7th Circuit Criminal Pattern Jury Instructions § 4.06. In accordance with this definition, the trial court informed the jury, through the supplemental instruction, that in order to find the defendant guilty under the statute, they had to find that he struck, pushed or made physical contact with "one or more of the deputy marshals . . . deliberately and not by accident or mistake." Because this supplemental instruction expressed the proper mental state required for a conviction under § 111, we conclude that the trial court fairly and adequately treated the issue, as the supplemental instruction corrected the trial court's previous error in using the term "intentionally" to define "forcibly" under the statute.[11]

The next *Sims* inquiry is whether the supplemental instruction was a correct statement of law. We have already concluded that the trial court's supplemental instruction expressed the proper mental state required for a conviction under § 111 in this Circuit and, therefore, was a correct statement of law.

---

[11] We note that even if the trial court had not provided the jury with the supplemental instruction and improperly maintained that the jury must find that the defendant acted intentionally in order to find him guilty under § 111, the error would have been of no consequence to the outcome of this case. That is because the effect of such an error would have been to place a *higher* burden on the prosecution than was required for a conviction under § 111.

Finally, we are convinced that the trial court's supplemental instruction specifically answered the jury's question, thereby fulfilling the third *Sims'* requirement. The jury asked the trial court to define the word "intentionally" as it was used in the jury instructions and his response specifically addressed that question. Accordingly, because we believe that the trial court's supplemental jury instruction satisfied the requirements of *Sims*, we hold that the additional instruction was proper and not in error.

We note that even if we were to assume that the trial court's supplemental instruction was in error—which we specifically hold that it was not—such error would not require a reversal of the defendant's conviction of assault of Deputy Ambrose. Reversal for an improper jury instruction is warranted only if the instruction misguides the jury so much that the litigant is prejudiced. *United States v. Lloyd*, 71 F.3d 1256, 1266 (7th Cir. 1995). In this case, the defendant was clearly not prejudiced by the trial court's instruction because, if anything, it placed a more onerous burden on the prosecution than was required under § 111. Moreover, the defendant's conviction for assault on Deputy Ambrose had ample support in the record. Deputies O'Malley, Ambrose, and Block all testified that during their struggle to handcuff the defendant in order to search the apartment for Davis, the defendant punched and assaulted Ambrose. Given this testimony, the jury could have found that the defendant violated § 111 by forcibly assaulting Deputy Ambrose while he was engaged in the performance of his official duties.

### III.  CONCLUSION

We AFFIRM the defendant's conviction on Count II of the indictment.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*