In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-3575

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

FRANCOIS COTÉ,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 271—**James B. Zagel,** *Judge*.

———————

ARGUED SEPTEMBER 5, 2007—DECIDED OCTOBER 9, 2007

———————

Before POSNER, RIPPLE and ROVNER, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Francois Coté was charged by indictment with travel in interstate commerce with intent to engage in a sexual act with a minor, a violation of 18 U.S.C. § 2423(b), and with using a facility or means of interstate commerce knowingly to attempt to persuade, induce or entice a minor to engage in a sexual act, a violation of 18 U.S.C. § 2422(b). He entered pleas of not guilty to both counts. A jury nevertheless convicted him of both counts, and he was sentenced to 72 months' imprisonment followed by 36 months of supervised release. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

## A.

Francois Coté, a forty-seven-year-old Canadian national living in New York, often frequented internet "chat rooms."[1] On January 27, 2003, using the screen-name "tenderkni," Mr. Coté entered a room entitled "#O!!!!!!!!!younggirlsex." The room was advertised as a "fantasy channel for young girls and those who love then [sic]."

Through the chat room, Mr. Coté initiated a private chat[2] with "lil'mary" ("Mary"). She described herself as "14 f chgo," internet slang for a fourteen-year-old female from Chicago. He identified himself as "43/M/NY," or a

---

[1] A chat room can best be described as a virtual interest club meeting place, where individuals go to meet and discuss topics of common interest. Each room is given a name and description so that users may enter the chat room most appropriate to their chosen subject. A chat room labeled "AutismParents," for example, might cater to adults wishing to discuss their common experiences raising an autistic child. Users sign in to a room under a screen-name of their choice, and they may participate in the common discussion by typing and monitoring the communications on-screen.

[2] A private chat is much like stepping outside the interest club meeting place. After meeting in a public chat room, a party may request a private conversation with another. The chat room will facilitate private on-screen communication. Other members of the chat room may not see or participate in the private conversation, but the private chatters may continue to participate in the larger public chat as well.

forty-three-year-old male from New York. Mr. Coté e-mailed Mary an actual photograph of himself, and Mary reciprocated with a picture of a young blonde girl on a bicycle. From January until his arrest on March 12, 2003, Mr. Coté and Mary communicated, on the internet and telephone, on more than thirty different occasions. They engaged in graphic sexual conversations,[3] often referencing Mary's young age and virginity, as well as her school activities and her need to hide their relationship from her mother. Mr. Coté and Mary discussed the risks and excitement of an in-person meeting, and they ultimately arranged a rendezvous in Chicago.

Unfortunately for Mr. Coté, the person using the screen-name "lil'mary" was neither a young girl (as the Government claims Mr. Coté believed) nor an adult woman role-playing a young girl/older man fantasy (as Mr. Coté claims he believed), but was instead Detective Mary DeLaurentis, a Cook County Sheriff's Deputy.

On March 12, 2003, Mr. Coté flew to Chicago to meet "Mary." When he arrived at the designated meeting place, a Wendy's restaurant a few blocks from her pretextual school, he verbally identified a young-looking undercover agent as Mary and embraced her. He was immediately arrested and taken into custody.

---

[3] For example, early in their relationship, Mr. Coté remarked: "I'm very excited that you are 14 years old and a virgin. . . . it's very exciting to be your first . . . to hear you and see as you receive so much pleasure for the first time." Tr. at 268.

**B.**

A four-day trial began on April 10, 2006. Over the objection of Mr. Coté's counsel, the court instructed the jury that:

> In order for the defendant to be found guilty of Count 2, the United States must prove each of the following propositions:
>
> > First, that the defendant used a facility or means of interstate commerce;
> >
> > Second, that the defendant used a facility or means of interstate commerce to knowingly attempt to persuade or induce or entice Lil'mary or Mary whom the defendant believed to be under 16 years of age to engage in a sexual act. . . .

Tr. at 567. Additionally, the court gave the jury the following attempt instruction:

> To 'attempt' means that the defendant knowingly took a substantial step toward the commission of the offense with the intent to commit that offense.

Tr. at 568. Finally, the court defined the term "knowingly" for the jury:

> When the word knowingly is used in these instructions, it means that the defendant realized what he was doing, was aware of the nature of his conduct and did not act through ignorance, mistake or accident. Knowledge may be proved by the defendant's conduct and by all of the other facts and circumstances surrounding the case.
>
> The government must prove that the defendant believed the person with whom he was communicat-

ing was a minor, but it is not a defense to the charge that the person was not, in fact, a minor.

Tr. at 568-69.

On April 13, the jury returned a guilty verdict. After the imposition of sentence, Mr. Coté timely appealed.

## II

## DISCUSSION

### A.

Mr. Coté contends that Section 2422(b) is unconstitutional on its face because the statute does not contain a scienter requirement with respect to the age of the victim. In *Smith v. California*, 361 U.S. 147 (1959), the Supreme Court held unconstitutional a California statute that dispensed with a *mens rea* requirement with respect to the contents of an obscene book. *Smith*, 361 U.S. at 218. The Court based its ruling on a concern that the statute would chill significant First Amendment activity by restricting booksellers' ability to disseminate information because they would be forced to inspect individually each book to ensure that it did not contain material that fell within the ambit of the statute. In Mr. Coté's view, the plain wording of Section 2422(b) inhibits legal and expressive activity, and therefore is facially unconstitutional. Section 2422(b), read without a scienter requirement for the victim's age, could chill legally protected adult communication. An individual would be forced to investigate the age of the other before initiating a communication.

At the time of the offense, 18 U.S.C. § 2422(b) read:

Whoever, using any facility or means of interstate or foreign commerce . . . knowingly persuades, induces,

entices, or coerces any individual who has not attained the age of 18 years to engage in prostitution or any sexual act for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 15 years, or both.

Pub. L. No. 105-314, 112 Stat. 2974 (current version at 18 U.S.C. § 2422(b) (2006) (scienter language has not been amended)). We review de novo questions concerning the constitutionality of federal statutes. *United States v. Hausmann*, 345 F.3d 952, 958 (7th Cir. 2003).

Section 2422(b), read without a scienter requirement for the age of the victim, arguably could chill protected forms of expression. We do not believe, however, that it is necessary or appropriate to read the statute in such fashion. In *Morissette v. United States*, 342 U.S. 246 (1952), the Supreme Court established a presumption in favor of a scienter requirement for each statutory element that criminalizes otherwise innocent conduct. In *Morissette*, the Court confronted a statute that read: "Whoever embezzles, steals, purloins, or knowingly converts . . . or without authority sells, conveys or disposes of any record, voucher, money or thing of value of the United States . . . shall be fined." *Id*. at 248 n.2. Although the most grammatically natural reading of the statute might be to apply the term "knowingly" exclusively to the verb "converts," the Court instead determined that the *mens rea* term also extended to all the necessary facts of conversion such as who actually owned the property. The Court was concerned about criminalizing otherwise innocent conduct, and thus it read a scienter term into the language of the statute. *Id*; *see also Staples v. United States*, 511 U.S. 600, 616 (1994) (requiring proof of knowledge of the facts that made

the defendant's conduct illegal, despite ambiguity in the statute); *Liparota v. United States*, 471 U.S. 419, 433-34 (1985) (same).

More recently, the Court employed the same analysis in a case involving child pornography. In *United States v. X-Citement Video*, 513 U.S. 64 (1994), the Court referred to *Morissette* in interpreting a statute to require proof of the defendant's knowledge that the victim was a minor. *Id*. at 70. The statute in question did contain the term "knowingly," but in an entirely separate paragraph from the provision referencing the age of the victim. The statute read:

(a) Any person who—

(1) knowingly transports or ships in interstate or foreign commerce by any means including by computer or mails, any visual depiction, if—

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct;

(2) knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if—

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

> (B) such visual depiction is of such conduct;
>
> . . . .
>
> shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252 (quoted in *X-Citement Video*, 513 U.S. at 68).

Although a far more natural reading would not have extended the adverb "knowingly" to the object of another paragraph, the Court interpreted the "knowingly" term to require proof that the defendant knew of the victim's minority as well. The Court was willing to avoid the plain wording of the statute because of the "presumption in favor of a scienter requirement" that "should apply to each of the statutory elements that criminalize otherwise innocent conduct." *X-Citement Video*, 513 U.S. at 72. It also noted that, when it is fairly possible, courts construe statutes in a manner to avoid substantial constitutional questions. *Id*. at 69. Finally, it held that its reading was more compatible with the intent of Congress. *Id.*

As in *X-Citement Video*, here the age of the victim is "the crucial element separating legal innocence from wrongful conduct." *Id*. at 73. Accordingly, Section 2422(b) may best be interpreted to contain a *mens rea* requirement regarding the victim's age. Another circuit has recently come to the same conclusion. In *United States v. Meek*, 366 F.3d 705 (9th Cir. 2004), the Ninth Circuit held that Section 2422(b), rather than be held facially unconstitutional, should be interpreted to contain a *mens rea* requirement for the age element of the crime. Relying on *X-Citement Video* and "canons of statutory interpretation," the court held that "the term 'knowingly' refers both to the verbs—'persuades, induces, entices, or coerces'—as

well as to the object—'a person who has not achieved the age of 18 years.' " *Id*. at 718.

We believe that the approach of our colleagues in the Ninth Circuit in *Meek* is compatible with the approach of the Supreme Court in *X-Citement Video* and with the obvious intent of Congress.[4] *Cf. X-Citement Video*, 513 U.S. at 69 ("It would seem odd, to say the least, that Congress distinguished between someone who inadvertently dropped an item into the mail without realizing it, and someone who consciously placed the same item in the mail, but was nonetheless unconcerned about whether the person had any knowledge of the prohibited contents of the package.").

Accordingly, we hold that Section 2422(b) is not unconstitutional on its face and that, in order to ensure the requisite criminal intent, the statute should instead be interpreted to require proof of the defendant's knowledge of the age of the victim.[5]

---

[4] Legislative history shows that the purpose of Section 2422(b) was to equip law enforcement with the tools necessary for combating internet child predators. *See* H.R. Rep. No. 105-557, at 678 (1998) ("As we usher in the computer age, law enforcement will be confronted with even newer challenges. The 'Child Protection and Sexual Predator Punishment Act' seeks to address those challenges by providing law enforcement with the tools it needs to investigate and bring to justice those individuals who prey on our nation's children.").

[5] Mr. Coté's laconic reference in a footnote that the statute upon which his conviction on Count I rests, 18 U.S.C. § 2423(b), "appears to be unconstitutional on its face" is not sufficient to raise this matter on appeal. *Palmquist v. Selvik*, 111 F.3d 1332,

(continued...)

**B.**

Mr. Coté next submits that, even if the statute is not facially unconstitutional, the district court erred when it instructed the jury that the defendant could be found guilty if he believed, albeit mistakenly, that the victim was a minor.

We review de novo the legal correctness of the jury instructions. *United States v. Evans*, 486 F.3d 315, 324 (7th Cir. 2007); *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005); *United States v. Jefferson*, 334 F.3d 670, 672 (7th Cir. 2003). Of course, we must review those instructions as a whole and reverse "only if the instructions, viewed as a whole, misguide the jury to the litigant's prejudice. . . . [A]s long as the instructions treat the issues fairly and accurately, they will not be disturbed upon appeal." *United States v. Palivos*, 486 F.3d 250, 257 (7th Cir. 2007) (quotations omitted); *see also Calhoun*, 408 F.3d at 379 ("We give the district court substantial discretion with respect to the precise wording of jury instructions so long as the final result, read as a whole, completely and correctly states the law."); *Evans*, 486 F.3d at 324 ("We give deference to the district court's discretion concerning the specific wording of the instructions, as long as the essential ele-

---

[5] (...continued)
1342 (7th Cir. 1997). In any event, courts considering similar challenges to this statute have rejected them. *See, e.g., United States v. Tykarsky*, 446 F.3d 458, 471 (3d Cir. 2006) ("Section 2423(b) does not simply prohibit traveling with an immoral thought, or even with an amorphous intent to engage in sexual activity with a minor in another state. The travel must be *for the purpose of* engaging in the unlawful sexual act.") (emphasis in original).

ments of the offenses charged are covered by the instructions given."). In sum, "if the instruction contains an error or misguides the jury, we reverse a jury verdict only if the error prejudiced a litigant." *Calhoun*, 408 F.3d at 379.

In evaluating the instructions given by the district court, we emphasize, at the outset, that Mr. Coté was prosecuted under the *attempt* provision of the statute. We agree with the Government, and with every circuit that has considered the issue,[6] that the Government's burden in such a case is to demonstrate, beyond a reasonable doubt, that the defendant *intended* to undertake one of the proscribed acts with respect to a minor. In short, the attempt provision, like other attempt provisions, requires that the defendant specifically intend to induce, entice or coerce a minor.

This view is merely an application of the well-established principle that factual impossibility or mistake of fact is not a defense to an attempt charge. *See, e.g., United States v. Cotts*, 14 F.3d 300, 307 (7th Cir. 1994) ("That [defendant] and his co-plotters ultimately could not have murdered the fictitious informant does not diminish the sincerity of any efforts to accomplish that end. Futile attempts because of factual impossibility are attempts still the same."). For an attempt conviction, the Government was

---

[6] *See, e.g., United States v. Brand*, 467 F.3d 179, 202 (2d Cir. 2006); *United States v. Tykarsky*, 446 F.3d 458, 465-69 (3d Cir. 2006); *United States v. Farner*, 251 F.3d 510, 512 (5th Cir. 2001); *United States v. Fuller*, 77 Fed. Appx. 371, 378 (6th Cir. 2000); *United States v. Helder*, 452 F.3d 751, 756 (8th Cir. 2006); *United States v. Meek*, 366 F.3d 705, 717-18 (9th Cir. 2004); *United States v. Sims*, 428 F.3d 945, 959 (10th Cir. 2005); *United States v. Root*, 296 F.3d 1222, 1227 (11th Cir. 2002).

required to prove that Mr. Coté acted with the specific intent to commit the underlying crime and that he took a substantial step towards completion of the offense. *United States v. Johnson*, 376 F.3d 689, 693 (7th Cir. 2004); *Cotts*, 14 F.3d at 308. By proving that Mr. Coté intended to entice a person whom he believed to be a minor into sexual acts and that he flew to Chicago to meet her, the Government has fulfilled this burden.

The district court instructed the jury that it had to find "that the defendant used a facility or means of interstate commerce to knowingly attempt to persuade or induce or entice Lil'Mary or Mary whom the defendant believed to be under 16 years of age to engage in a sexual act." Tr. at 567. Mr. Coté submits that the district court's use of the term "believed" as opposed to "knew" diluted significantly the scienter requirement. In Mr. Coté's view, the statute requires that the defendant have knowledge, not simply a belief, of the age of the victim. The Government replies that, in the context of an attempt charge, the district court's instruction was correct; it was the subjective belief of Mr. Coté that he was dealing with an underage girl that had to be proved to the jury.

The Government is correct. Whatever might be the possible semantical distinctions between "believe" and "know," Mr. Coté articulates no discernable difference between "belief" and "knowledge" in the context of this case.[7] In a criminal attempt, a defendant who believes

---

[7] Mr. Coté invites our attention to *United States v. Golomb*, 811 F.2d 787, 792 (2d Cir. 1987) ("Knowledge and belief are very different mental states; knowledge implies a much higher degree of certainty."). Mr. Golomb had been the target of an undercover

(continued...)

certain requisite facts to be true has the necessary intent for a crime requiring the *mens rea* of "knowledge."

## Conclusion

The judgment of the district court is affirmed.

AFFIRMED

---

[7] (...continued) operation in which government agents sold him fake "stolen" checks. The statute criminalized receiving and retaining government property "knowing it to have been embezzled, stolen, purloined, or converted." *Id*. at 792. The court held that the defendant could not be convicted under the statute because the checks in his possession were fake, and therefore actually had never been stolen. It noted that the legislative history showed that Congress had intended to codify the common law property crime, and under the common law one cannot be convicted of receiving stolen property if the goods were not, in fact, stolen. Unlike in *Golomb*, however, no legislative history for Section 2422(b) suggests that Congress intended to differentiate between internet predators targeting actual minors and the few who had accidentally spoken with an undercover agent. In fact, other courts have inferred just the opposite. *See, e.g., Tykarsky*, 446 F.3d at 468; *Meek*, 366 F.3d at 718. More importantly, the fact that the present situation involves an "attempt" case distinguishes *Golomb* from this case. The crime in question in *Golomb* was the actual receipt, not the attempted receipt, of stolen property. The charge against Mr. Coté is one of attempted enticement, not actual enticement. Although mistake of fact was a defense in *Golomb*, it fails here.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*