NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0112n.06
Filed: February 14, 2006

**Case Nos. 03-6573, 04-5364, 03-6599**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | WESTERN DISTRICT OF |
| | ) | KENTUCKY |
| | ) | |
| TONYA WASHINGTON, NAKEITHA | ) | |
| JACKSON, AND MARLOS HINES | ) | OPINION |
| Defendants-Appellants. | ) | |


**BEFORE:  DAUGHTREY and GIBBONS, Circuit Judges; and SARGUS, District Judge.***


**SARGUS, District Judge.**   Defendants-Appellants Nakeitha Jackson and Marlos Hines were convicted by a jury of conspiracy to possess with intent to distribute and possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841 and 846.  Defendant-Appellant Tonya Washington was convicted by a jury of knowingly disposing of a firearm to a convicted felon, in violation of 18 U.S.C. § 922(d)(1) and 924(a)(2).  In this appeal, the Defendants challenge the sufficiency of the evidence upon which their convictions were based.  Jackson and Hines also appeal the district court's refusal to find that they had accepted

---

*The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

responsibility for their conduct, otherwise entitling them to a three-point reduction in their offense level under § 3E1.1 of the Sentencing Guidelines.

For the reasons that follow, as to Jackson and Hines, the decisions of the district court denying the motions for judgment of acquittal based on an alleged insufficiency of the evidence, together with the district court's decision denying acceptance of responsibility, are affirmed. The sentences imposed are vacated and remanded to the district court in light of *United States v. Booker*, 125 S. Ct. 738 (2005). Further, the decision of the district court denying Washington's motion for acquittal is reversed.

**I.**

On April 28, 2002, Bureau of Alcohol, Tobacco and Firearms Special Agent David Hayes received information about drug dealing activity in the Russellville, Kentucky area. Agent Hayes, along with three confidential informants, began an investigation which lasted from approximately May 20, 2002 until November 2, 2002 and involved numerous controlled buys of powder and crack cocaine. The Court sets forth pertinent facts as to each Defendant-Appellant herein.

1.    *Nakeitha Jackson*

In the course of investigating one Marcel Edwards, the Bureau of Alcohol, Tobacco, and Firearms ("ATF") became aware of Jackson's drug dealing activities. On September 6, 2002, Confidential Informant Chris Bratcher purchased an "eight ball"[1] of crack cocaine from one Douglas Steven Johnson. Jackson sold this eight ball to Johnson, and Johnson in turn sold it to Bratcher. On September 8, 2002, Confidential Informant Bratcher purchased

---

[1]An "eight ball" of crack cocaine is approximately 3.5 grams.

approximately 5 grams of crack from Johnson and Jackson. Both exchanges were tape-recorded. Agent Hayes observed both of these interactions from afar. During the September transaction, Agent Hayes observed a gold Jeep Cherokee, the kind of automobile Jackson drove, pull out of the driveway. Agent Hayes saw an individual he later identified as Jackson during the September 8 sale.

Jackson was arrested on January 10, 2003. Jackson signed a waiver of his right to remain silent and his right to counsel and made a tape-recorded statement to the police. In this statement, Jackson indicated that he had a contact in Nashville who would supply him with approximately 9 ounces of cocaine approximately once or twice a week. He also indicated that Marlos Hines would occasionally buy approximately 1 ounce of cocaine from him at a time. Jackson claimed that Hines had purchased cocaine from him one week prior to the interview. Jackson further indicated that Edwards would buy cocaine from him on an occasional basis. Jackson stated that the most Edwards ever purchased from him was 1 ounce. Jackson noted that Edwards often had a larger quantity of cocaine in his possession than the amount purchased from Jackson, and that Edwards had other sources because Edwards felt that Jackson's prices were too high. Jackson also indicated that he and Edwards did not get along particularly well due to a "falling out" in their past.

On January 8, 2003, a grand jury in the Western District of Kentucky returned a Superseding Indictment against Marcel Edwards, Marlos Hines, Nakeitha Jackson, Douglas Steven Johnson, Calvin Merrell and Tonya Washington. Edwards, Johnson, and Merrell pled guilty to the charges against them contained in the indictment. The grand jury charged Jackson in Count one with conspiring, between April 28, 2002 and November 2, 2002, to aid and abet in

3

the knowing and intentional possession with intent to distribute and distribution of a mixture or substance containing cocaine base, commonly known as crack cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). Count five charged Jackson with knowingly and intentionally possessing with intent to distribute and distribution of a mixture or substance containing cocaine base on September 6, 2002, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(c). Count six charged Jackson with knowingly and intentionally possessing with intent to distribute and distributing cocaine base on September 8, 2002, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii).

At trial, Marcel Edwards and Douglas Steven Johnson, two charged co-conspirators; Tommy Stewart, John Stewart and Chris Bratcher, three confidential informants involved in the case; and Special Agent David Hayes testified regarding Jackson's involvement in drug dealing. At the close of the Government's case against Jackson, Jackson made a motion for judgment of acquittal, arguing that there was insufficient evidence on the conspiracy charge. The court overruled the motion, finding that the Government had set forth sufficient evidence to support a conviction. The jury returned a guilty verdict for Jackson on Counts one, five, and six of the indictment. The jury further returned a special verdict, finding beyond a reasonable doubt that Jackson possessed 5 or more grams of cocaine base in connection with Count one of the indictment. Jackson filed a motion, on or about July 21, 2003, for a new trial or for judgment of acquittal notwithstanding the verdict pursuant to Fed. R. Crim. P. 29 and 33. The district denied the motion on September 25, 2003.

After a sentencing hearing conducted on November 12, 2003, the district court determined that Jackson had possessed 1.5 kilograms or more of cocaine base, thereby making his offense level thirty-eight according to the Drug Quantity Table set forth in U.S.S.G. §

4

2D1.1(c)(1).  The district court then applied a four level enhancement to Jackson's sentence pursuant to U.S.S.G. § 3B1.1 over defense counsel's objection based on a finding that Jackson was "at least one of the leaders of this criminal activity and . . . there were five or more participants involved in it." (JA 480).  The district court declined to impose a sentence enhancement for being a career offender under U.S.S.G. § 4B1.1.  Jackson sought a two level reduction pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility, which the district court rejected.  Jackson's final offense level was a forty-two and his criminal history category was six, placing him in a sentencing range of 360 months to life imprisonment.  The district court then sentenced Jackson to 360 months imprisonment.  (JA 485).  Jackson filed the instant appeal on or about December 11, 2003.  (JA 75).

### 2. *Marlos Hines*

Marlos Hines, Edwards' half-brother, was also identified during the investigation as an individual involved in dealing cocaine.  On May 22, 2002, Hines delivered .46 grams of crack cocaine to confidential informant Tommy Stewart, on Edwards' behalf.  On May 31, 2002, Hines delivered 1.15 grams of crack cocaine to the confidential informant Stewart again on Edwards' behalf.  A confidential informant also spoke with Hines on the telephone on July 3, 2002, regarding a shortage in the amount of crack cocaine purchased from Edwards earlier in the day.

On January 8, 2003, the grand jury charged Hines in Count one with conspiring between April 28, 2002 and November 2, 2002 to aid and abet in the knowing and intentional possession with intent to distribute and distribution of a mixture or substance containing cocaine base, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).  Count three charged Hines with knowingly and intentionally possessing with intent to distribute and distribution of a mixture or

substance containing cocaine base on May 31, 2002, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

The jury returned a guilty verdict for Hines on Counts one and three of the superseding indictment. The jury also returned a special verdict in which it did not find beyond a reasonable doubt that Hines possessed 5 or more grams of cocaine base in connection with Count one. The district court subsequently determined that approximately 34.72 grams of crack cocaine and 29 grams of powder cocaine were attributable to Hines, yielding a base offense level of thirty according to the Drug Quantity Table set forth in U.S.S.G. § 2D1.1(c)(1). Hines sought a two level reduction pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility, which the district court rejected. Hines' criminal history category was one, placing him in a sentencing range of 97 to 121 months imprisonment. The district court imposed a sentence of 97 months.

### 3. *Tonya Washington*

Washington's involvement in this case arose from her relationship with Edwards. On the morning of November 2, 2002, Special Agent Hayes observed Edwards and Washington leave Edwards' home and get into Washington's vehicle. Agent Hayes followed the vehicle to the automobile detail shop where Edwards worked. When Edwards exited the vehicle, Agent Hayes apprehended him, while Hayes's partner, Agent Thielhorn, attended to Washington.

Thielhorn informed Hayes that there was a loaded gun in Washington's vehicle. According to Hayes, when Edwards was asked about the gun, he said that he knew about the gun but that it did not belong to him. When asked whether his fingerprints would be likely be found on the gun, Edwards answered, "Yes, probably," and indicated that he had moved it on occasion. Edwards was then arrested and charged with being a felon in possession of a firearm and also on

6

drug charges. A Beretta model 3032 Tomcat .32 semiautomatic pistol was retrieved from Washington's purse inside her truck.

Washington gave a tape-recorded statement to Agent Thielhorn that same morning. In that statement, Washington admitted to Agent Thielhorn that she knew that Edwards was a convicted felon and therefore could not lawfully possess a firearm. Washington also stated that she assumed that Edwards knew that she owned the gun, but that he had never asked or tried to use the gun. Washington also indicated that she never locked the gun or otherwise made it inaccessible to Edwards.

The grand jury charged Washington in Count eight with knowingly disposing of a firearm to Edwards, a person Washington knew or had reasonable cause to believe had been convicted of a felony, in violation of 18 U.S.C. §§ 922(d)(1) and 924(a)(2). At trial, Edwards denied knowing that Washington had a gun in her purse on November 2, 2002. He asserted that "nine out of ten [times]" he did not know that she kept a gun on her person. Edwards testified that Washington did not attempt to keep the gun away from him. Edwards also testified that he once saw it in the truck and told Washington that he couldn't be near the gun and "slid it toward her." He stated that after that incident, he never saw the gun again. On the other hand, Edwards once told confidential informant Tommy Stewart that he was "packing." Stewart noted a bulge in Edwards's pocket at the time and assumed that it was a gun. Edwards pleaded guilty to possession of a firearm after having been previously convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Edwards's felon-in-possession charge was based on the fact that Washington's firearm was found in her truck on the morning of November 2, 2002. Edwards acknowledged that as part of the plea agreement, he was required to tell the truth in

7

connection with the charge.

At the close of the Government's case, Washington made a motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(a), based on insufficient evidence on the firearm charge. The district court overruled the motion. Washington then testified in her defense. The jury returned a guilty verdict for Washington on the firearm charge. Washington filed a motion for acquittal notwithstanding the jury verdict pursuant to Federal Rule of Criminal Procedure 29(c). The district court denied the motion on September 25, 2003.

**II.**

All three appellants challenge the sufficiency of the evidence as to their convictions. The denial of a motion for judgment of acquittal is reviewed *de novo*. *United States v. Hines*, 398 F.3d 713, 719 (6th Cir. 2005). The reviewing court does not weigh the evidence, consider the credibility of the witnesses, or substitute its own judgment for the judgment of the jury. *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001). The key question is not whether the court itself believes the evidence establishes guilt beyond a reasonable doubt, but rather whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the elements of the crime were established beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). As such, the review for sufficiency of the evidence is "quite limited." *United States v. Crossley*, 224 F.3d 847, 855 (6th Cir. 2000).

Appellants Jackson and Hines challenge the sentences imposed in their cases under *Blakely v. Washington*, 124 S. Ct. 2531 (2004) and *United States v. Booker*, 125 S. Ct. 738 (2005), decided after briefing in this case. Because neither appellant raised this issue before the district court, we review the sentences imposed for plain error under *United States v. Oliver*, 397 F.3d 369, 378 (6th Cir. 2005).

Appellants Jackson and Hines also challenge the district court's denial of a downward

8

adjustment pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility. This court reviews the district court's denial of the reduction for clear error. *United States v. Farrelly*, 389 F.3d 649, 656 (6th Cir. 2004).

## III.

**A.  The district court did not err in denying Jackson's motion for a judgment of acquittal.**

Jackson argues on appeal that the district court erred in failing to grant his motion for judgment of acquittal with respect to all of the conspiracy charges contained in the indictment. In particular, Jackson contends that the evidence was insufficient to establish that he was engaged in a conspiracy with the four other charged defendants in this case, and argues that all that was proved was "occasional sales to individuals in Logan County."

In order to establish a conspiracy under 21 U.S.C. § 846, the Government has the burden of proving beyond a reasonable doubt, the following three elements: (1) an agreement to violate the drug laws; (2) knowledge and intent to form a conspiracy; and (3) participation in the conspiracy. *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996). Jackson specifically challenges the sufficiency of the evidence with regard to whether there was an agreement formed between the alleged co-conspirators. In order to support a conviction for a conspiracy, the Government must show that the conspiracy members came to some form of a mutual understanding regarding the illegal activity. *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990). A formal agreement among the co-conspirators is not required; rather, the evidence need only show some tacit or implicit understanding. *United States v. Hughes*, 891 F.2d 597, 601 (6th Cir. 1989). Evidence of acts performed for a common purpose may be sufficient to support an

9

inference of an agreement. *United States v. Luxenberg*, 374 F.2d 241, 250 (6th Cir. 1967). "The government need not show that a defendant participated in all aspects of the conspiracy; it need only prove that the defendant was a party to the general conspiratorial agreement. Although the connection between the defendant and the conspiracy need only be slight, an agreement must be shown beyond a reasonable doubt." *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997). A single sale may be sufficient to support a conspiracy conviction. *United States v. Price*, 258 F.3d 539, 545 (6th Cir. 2001). Further, in a "drug chain" conspiracy, it is sufficient to show that a defendant realized that he was participating in a joint venture, even if he did not know the identities of all the other co-conspirators or participate in all of the actions taken in furtherance of the conspiracy. *Id.*

Sufficient evidence exists in this case to support the jury's determination that Jackson was involved in a drug conspiracy between April 28 and November 2, 2002. Johnson, another indicted member of the conspiracy who pled guilty to the conspiracy charges, testified at trial that Jackson was his primary source of cocaine. Johnson also testified that on September 6 and 8, 2002, he contacted Jackson in order to buy cocaine to sell to confidential informant Bratcher. Johnson stated that Jackson knew that Johnson was purchasing the drugs to resell to someone else, and that Bratcher was present when Jackson showed up to sell Johnson the drugs. Special Agent Hayes and Bratcher both testified regarding the two sales on September 6 and 8, 2002. Edwards, a cooperating co-defendant, also testified at trial that he engaged in drug-dealing activity with Jackson. Jackson himself told Special Agent Hayes in a tape recorded statement that he occasionally sold drugs to Edwards. During the course of this tape-recorded statement, Jackson stated that he would obtain large quantities of crack cocaine from Nashville, Tennessee,

10

and would resell the drugs to individuals in Russellville, Kentucky, including Edwards.

It is true that Edwards also testified that he purchased drugs from individuals other than Jackson, and further, would not definitively answer whether he had purchased crack cocaine from Jackson between April and November of 2002. Additionally, there is some evidence in the record that Jackson and Edwards did not get along, and also that Edwards thought that Jackson's prices were too high. Viewing the evidence in the light most favorable to the prosecution, however, these statements alone are not sufficient to support Jackson's argument that the motion for judgment of acquittal should have been granted. Based on the evidence presented at trial, a reasonable jury could have found that Jackson knowingly and intentionally entered into a conspiratorial agreement to sell drugs with the co-conspirators and acted in furtherance of that agreement. As a result, Jackson's argument that the district court erred in failing to grant his motion for judgment of acquittal is erroneous.

**B. The district court erred in denying Washington's motion for judgment of acquittal.**

Washington argues on appeal that the district court erred in denying her motion for judgment of acquittal. Washington was convicted of violating 18 U.S.C. § 922(d), which makes it "unlawful for a person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person" is a convicted felon. 18 U.S.C. § 922(d)(1). Washington argues that the evidence was insufficient to support a finding by the jury that she had any intention or took any action to "dispose of" the firearm or make it available to Edwards, a convicted felon.

The Eighth Circuit has noted that "disposal," as a correlative of "acquisition," occurs

11

when the defendant allows another person to "come into possession, control, or power of disposal of a firearm." *United States v. Monteleone*, 77 F.3d 1086, 1092 (8th Cir. 1996), *quoting Huddleston v. United States*, 415 U.S. 814, 823 (1974). The Seventh Circuit has interpreted "dispose of" to mean "to transfer a firearm so that the transferee acquires possession of the firearm." *United States v. Jefferson*, 334 F.3d 670, 675 (7th Cir. 2003). Possession over the weapon may be "either actual or constructive and it need not be exclusive but may be joint. Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Covert*, 117 F.3d 940, 948 (6th Cir. 1997) (internal quotations and citations omitted). The crux of the issue with respect to Washington's conviction is whether the conduct that the government proved amounts to disposal of a firearm within the meaning of the statute.

Washington and Edwards had been dating for about fourteen months before Edwards was arrested, and Washington described the relationship as intimate. Washington spoke to Agent Thielhorn in a tape recorded statement on November 2, 2002, and also admitted at trial that she knew that Edwards was a convicted felon and therefore could not legally have a gun. Washington admitted that she possessed a firearm at times when Edwards was present and that she kept the gun in her purse, in the hidden compartment in her truck, or in her house.

Washington was employed by the Logan County Sheriff's Department, although at the time those charges arose, she was on medical leave. As part of her duties, she was required to carry a firearm. She also testified that she had received threats in the course of her work, and

12

consequently carried the firearm for protection.

Washington also testified that, while she did not lock up the gun, she did not leave it unattended or accessible to Edwards when she was not present. On one occasion, she testified that Edwards noticed the gun in her car and asked her to move it, which she did. From the evidence at trial, it is clear that Washington had the gun in Edward's presence; no evidence was adduced that she gave the gun to him, left it in his presence while she was absent, or countenanced his possession of the weapon.

Considered in the light most favorable to the government, this proof permits an inference that Washington took no steps to prevent Edwards from having access to her gun. The evidence of record does not, however, permit an inference that Washington "disposed of" the gun to Edwards under any reasonable construction of those words.

In considering whether Washington "disposed of" the firearm, it is useful to consider the proper use of two pieces of evidence on which the government relied. First, Tommy Stewart testified that Edwards carried a small gun on several occasions. This testimony supports an inference that Edwards carried a gun but is far too imprecise to support an inference that Edwards carried *Washington's* gun. In fact, since Washington carried the gun in connection with her job, it seems rather unlikely that Edwards was routinely carrying it. Even if such an inference could be drawn, it would go to the issue of Edwards's possession of the gun, not Washington's disposition of it. Second, the fact that Edwards pled guilty to possession of Washington's gun as a convicted felon cannot be used to establish disposition of the gun by Washington. Evidence of the guilty plea could properly be considered by the jury only for the purpose of evaluating the credibility of Edwards, not to establish the guilt of Washington.

13

Further, evidence of Edwards's possession of the gun cannot suffice to establish Washington's disposition of it. The evidence presented at trial is insufficient to support her conviction.

Based upon the foregoing, the district court erred in denying Washington's motion for judgment of acquittal.

**C. The sentence imposed on Jackson meets the plain error test and therefore must be remanded in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005).**

Jackson appeals his sentence, arguing that it was imposed contrary to the Supreme Court's ruling in *United States v. Booker*, 125 S. Ct. 738 (2005) because the district court sentenced him based on judicially-found facts that were not admitted to by the defendant or found by the jury beyond a reasonable doubt. Because Jackson did not raise the *Booker* argument before the district court, we review Jackson's sentence for plain error.

The jury found beyond a reasonable doubt that Jackson possessed five or more grams of cocaine base in connection with the Count one conspiracy charge. The presentence investigation report found the amount of crack cocaine attributable to the defendant was 9.95085 kilograms, and therefore recommended that Jackson's base offense level be set at a thirty-eight according to the Drug Quantity Table at U.S.S.G. § 2D1.1(c)(1). At sentencing, the district court heard evidence regarding the proper quantity of drugs attributable to Jackson and whether the quantity was more likely being handled in powder or crack form. After hearing argument on the issue, the district court determined, by a preponderance of the evidence, that Jackson possessed more than 1.5 kilograms of crack cocaine during the course of the conspiracy and thus an offense level of thirty-eight was proper under § 2D1.1(c)(1). The district court also imposed a four level enhancement pursuant to § 3B1.1 based on a finding that Jackson was "at least one of the leaders

14

of this criminal activity." (JA 480).

In order to establish plain error, Jackson must show: (1) an error; (2) which was plain, meaning obvious or clear; (3) that affected Jackson's substantial rights; and (4) that seriously affected the fairness, integrity or public reputation of the proceedings. *United States v. Oliver*, 397 F.3d 369, 378 (6th Cir. 2005). The first prong is met because the district court sentenced Jackson based on a higher quantity of drugs than the amount found by the jury beyond a reasonable doubt. The second prong is also met, as established in *Booker*, 125 S. Ct. at 379. Third, the error clearly affected Jackson's substantial rights, because it "affected the outcome of the district court proceedings." *United States v. Cotton*, 535 U.S. 625, 632 (2002) (citation omitted); had Jackson been sentenced just based on the finding of the jury beyond a reasonable doubt, he would have been sentenced for possessing five grams of cocaine base, a quantity which carries a base offense level of twenty-six. Finally, the error affected the fairness, integrity, and reputation of the proceeding because the court imposed a more severe sentence than that supported by the jury verdict. *See Oliver*, 397 F.3d at 380. Therefore, this case must be remanded for resentencing in light of *Booker*.

**D. The sentence imposed on Hines violated his Sixth Amendment rights and thus must be remanded in accordance with *Booker*.**

Hines also argues that his sentence violates *Booker*, 125 S. Ct. 738 (2005). The jury indicated on the special verdict form that they did not find beyond a reasonable doubt that Hines possessed more than 5 grams of cocaine base in connection with the conspiracy charges. This finding would set Hines' base offense level at a maximum of twenty-four. The presentence investigation report recommended that Hines be held accountable for 61.145 grams of crack

15

cocaine and 6.9 grams of powder cocaine, rendering his base offense level a thirty-two. At sentencing, the district court heard evidence on what quantity of cocaine base was attributable to Hines, ultimately finding that Hines was responsible for 34.72 grams of crack and 29 grams of powder. According to the Drug Quantity Table, the district court found that Hines' base offense level would be a thirty.

At sentencing, Hines made an oral objection to the Government's argument that he should be responsible for greater than 5 grams of cocaine base. Hines argues that this objection was sufficient to preserve the issue of whether his sentence violated his Sixth Amendment rights, and the Government concedes that Hines raised this issue before the district court and therefore preserved the issue for appeal. As such, this Court reviews Hines' sentence *de novo*. *Stewart*, 306 F.3d at 311 (holding that constitutional challenges to sentencing are reviewed *de novo*).

Under *Booker*, because the district court sentenced Hines based on an amount for which the jury explicitly did not find Hines responsible, his Sixth Amendment rights were violated. *Booker*, 125 S.Ct. at 756. Unless this Sixth Amendment error is shown to be harmless, Hines is entitled to resentencing. *See United States v. Stewart*, 306 F.3d 295, 323 (6th Cir. 2002) (reviewing properly preserved constitutional challenge under *Apprendi* for harmless error). Because there has been no showing that the error was harmless, Hines is entitled to re-sentencing.

**E. The district court did not clearly err in declining to grant either Jackson's or Hines' request for a downward adjustment pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility.**

Both Jackson and Hines argue on appeal that the district court erred in failing to grant

16

them each a two level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Both Jackson and Hines sought this adjustment in their sentencing memoranda and at the sentencing hearing. Both argue that they should not be denied the two level reduction merely because each exercised his constitutional right to a jury trial. Jackson further argues that he is entitled to the reduction because he did not testify or deny the allegations against him, because he answered all of the questions posed by the prosecution, and because he expressed regret and remorse for his actions at sentencing. Hines argues that he was entitled to the reduction because he did not testify or introduce contradictory evidence at trial and because the only factor at issue in his trial was the quantity of drugs.

U.S.S.G. § 3E1.1 provides for a two level reduction where a "defendant clearly demonstrates acceptance of responsibility for his offense." The application notes to the guideline state, "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.*, application note 2. The application note states that conviction by guilt does not always preclude a reduction under § 3E1.1, but such an occurrence would be limited to "rare" situations, such as when a defendant goes to trial to preserve an issue unrelated to his factual guilt. *Id.* In such a scenario, "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." *Id.*

The district court did not clearly err in declining to grant a reduction under U.S.S.G. § 3E1.1. Both defendants put the Government to its burden of proof at trial. Although it is true that neither presented a defense, both defendants cross-examined witnesses and argued through counsel that they should not be found culpable. Moreover, Jackson persists in contesting his

17

conviction on this very appeal. Thus, the requests made by Jackson and Hines for reductions pursuant to § 3E1.1 were properly denied.

## CONCLUSION

For the foregoing reasons, the convictions of appellants Jackson and Hines are affirmed. The conviction of Washington is vacated and remanded for further proceedings consistent with this opinion. The decision of the district court to deny the two level downward reduction pursuant to § 3E1.1 is affirmed as to Jackson and Hines. The sentences imposed upon Jackson and Hines are vacated and remanded for resentencing in light of *Booker*.