**NOT RECOMMENDED FOR PUBLICATION**
File Name: 09a0059n.06
Filed: January 27, 2009

**Nos. 06-5790 / 06-5804**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, **)** | |
| *Plaintiff - Appellee,* **)** | |
| v. **)** | |
| NAKEITHA JACKSON, **)** | |
| *Defendant - Appellant.* **)** | **ON APPEAL FROM THE UNITED** |
| **)** | **STATES DISTRICT COURT FOR THE** |
| **)** | **WESTERN DISTRICT OF KENTUCKY** |
| UNITED STATES OF AMERICA, **)** | **AT BOWLING GREEN** |
| *Plaintiff - Appellee,* **)** | |
| v. **)** | |
| MARLOS HINES, **)** | |
| *Defendant - Appellant.* **)** | |

**BEFORE: DAUGHTREY and GILMAN, Circuit Judges; EDMUNDS,* District Judge**

    **EDMUNDS, District Judge.** Nakeitha Jackson ("Jackson") and Marlos Hines ("Hines")

were convicted by a jury of conspiracy to possess with intent to distribute and possession with intent

to distribute crack cocaine, in violation of 21 U.S.C. §§ 841 and 846. Jackson was sentenced to 360

months of imprisonment, and Hines was sentenced to 97 months of imprisonment. On direct appeal,

we affirmed Jackson's and Hines' convictions, but remanded for resentencing in light of *United*

---

    *The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District
of Michigan, sitting by designation.

*States v. Booker*, 543 U.S. 220 (2005). *See United States v. Washington*, 166 F. App'x 823 (6th Cir. 2006).

On remand, the district court once again sentenced Jackson to 360 months of imprisonment and Hines to 97 months of imprisonment. Jackson and Hines now appeal these sentences, arguing that their sentences were improperly enhanced based on judicially found facts contrary to those found by the jury beyond a reasonable doubt, and further arguing that, even if properly considered, those judicially found facts were clearly erroneous.

Jackson's and Hines' sentences are AFFIRMED. The district court's factual findings do not increase Jackson's or Hines' sentences beyond the statutory maximums for the crimes on which the jury convicted them, and the district court's findings are not clearly erroneous.

**I.**

The following facts are from this Court's earlier opinion addressing Jackson's and Hines' convictions and sentences. In April 2002, Bureau of Alcohol, Tobacco and Firearms ("ATF") Special Agent David Hayes received information about drug-dealing activity in the Russellville, Kentucky area. Agent Hayes and three confidential informants began an investigation lasting from approximately May 20, 2002 until November 2, 2002 and involving numerous controlled buys of crack and powder cocaine. The facts as to Jackson are set out first.

**A.     Nakeitha Jackson**

In the course of investigating another individual, Marcel Edwards, the ATF became aware of Jackson's drug-dealing activities.

On September 6, 2002, Confidential Informant Chris Bratcher purchased an "eight ball"[1] of crack cocaine from one Douglas Steven Johnson. Jackson sold this eight ball to Johnson, and Johnson in turn sold it to Bratcher. On September 8, 2002, Confidential Informant Bratcher purchased approximately 5 grams of crack from Johnson and Jackson. Both exchanges were tape-recorded. Agent Hayes observed both of these interactions from afar. During the September transaction, Agent Hayes observed a gold Jeep Cherokee, the kind of automobile Jackson drove, pull out of the driveway. Agent Hayes saw an individual he later identified as Jackson during the September 8 sale.

Jackson was arrested on January 10, 2003. Jackson signed a waiver of his right to remain silent and his right to counsel and made a tape-recorded statement to the police. In this statement, Jackson indicated that he had a contact in Nashville who would supply him with approximately 9 ounces of cocaine approximately once or twice a week. He also indicated that Marlos Hines would occasionally buy approximately 1 ounce of cocaine from him at a time. Jackson claimed that Hines had purchased cocaine from him one week prior to the interview. Jackson further indicated that Edwards would buy cocaine from him on an occasional basis. Jackson stated that the most Edwards ever purchased from him was 1 ounce. Jackson noted that Edwards often had a larger quantity of cocaine in his possession than the amount purchased from Jackson, and that Edwards had other sources because Edwards felt that Jackson's prices were too high. Jackson also indicated that he and Edwards did not get along particularly well due to a "falling out" in their past.

On January 8, 2003, a grand jury in the Western District of Kentucky returned a Superseding Indictment against Marcel Edwards, Marlos Hines, Nakeitha Jackson, Douglas Steven Johnson, Calvin Merrell and Tonya Washington. Edwards, Johnson, and Merrell pled guilty to the charges against them contained in the indictment.

The grand jury charged Jackson in Count one with conspiring, between April 28, 2002 and November 2, 2002, to aid and abet in the knowing and intentional possession with intent to distribute and distribution of a mixture or substance containing cocaine base, commonly known as crack cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). Count five charged Jackson with knowingly and intentionally possessing with intent to distribute and distribution of a mixture or substance containing cocaine base on September 6, 2002, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(c). Count six charged Jackson with knowingly and intentionally possessing with intent to distribute and distributing cocaine base on September 8, 2002, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii).

---

[1]An "eight ball" of crack cocaine is approximately 3.5 grams.

At trial, Marcel Edwards and Douglas Steven Johnson, two charged co-conspirators; Tommy Stewart, John Stewart and Chris Bratcher, three confidential informants involved in this case; and Special Agent David Hayes testified regarding Jackson's involvement in drug dealing. . . . The jury returned a guilty verdict for Jackson on Counts one, five, and six of the indictment. The jury further returned a special verdict, finding beyond a reasonable doubt that Jackson possessed 5 or more grams of cocaine base in connection with Count one of the indictment. . . .

After a sentencing hearing conducted on November 12, 2003, the district court determined that Jackson had possessed 1.5 kilograms or more of cocaine base, thereby making his offense level thirty-eight according to the Drug Quantity Table set forth in U.S.S.G. § 2D1.1(c)(1). The district court then applied a four level enhancement to Jackson's sentence pursuant to U.S.S.G. § 3B1.1 over defense counsel's objection based on a finding that Jackson was "at least one of the leaders of this criminal activity and . . . there were five or more participants involved in it." (JA 480). . . . Jackson's final offense level was a forty-two and his criminal history category was six, placing him in a sentencing range of 360 months to life imprisonment. The district court then sentenced Jackson to 360 months imprisonment. . . .

166 F. App'x at 825-27.

## B.     Marlos Hines

The following discussion of the facts concerning Hines' conviction and first sentencing also come from this Court's earlier opinion.

Marlos Hines, Edwards' half-brother, was also identified during the investigation as an individual involved in dealing cocaine. On May 22, 2002, Hines delivered .46 grams of crack cocaine to confidential informant Tommy Stewart, on Edwards' behalf. On May 31, 2002, Hines delivered 1.15 grams of crack cocaine to the confidential informant Stewart again on Edwards' behalf. A confidential informant also spoke with Hines on the telephone on July 3, 2002, regarding a shortage in the amount of crack cocaine purchased from Edwards earlier in the day.

On January 8, 2003, the grand jury charged Hines in Count one with conspiring between April 28, 2002 and November 2, 2002 to aid and abet in the knowing and intentional possession with intent distribute and distribution of a mixture or substance containing cocaine base, in violation of 18 U.S.C. § 2 and 18 U.S.C. §

4

841(a)(1). Count three charged Hines with knowingly and intentionally possessing with intent to distribute and distribution of a mixture or substance containing cocaine base on May 31, 2002, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

The jury returned a guilty verdict for Hines on Counts one and three of the superseding indictment. The jury also returned a special verdict in which it did not find beyond a reasonable doubt that Hines possessed 5 or more grams of cocaine base in connection with Count one. The district court subsequently determined that approximately 34.72 grams of crack cocaine and 29 grams of powder cocaine were attributable to Hines, yielding a base offense level of thirty according to the Drug Quantity Table set forth in U.S.S.G. § 2D1.1(c)(1). Hines sought a two level reduction pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility, which the district court rejected. Hines' criminal history category was one, placing him in a sentencing range of 97 to 121 months imprisonment. The district court imposed a sentence of 97 months.

*Washington*, 166 F. App'x at 827.

### C. Direct Appeal and Remand in Light of *Booker*

Jackson and Hines both appealed their convictions and sentences. After affirming their convictions and the district court's denial of their motions for a downward adjustment pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility, we remanded for resentencing in light of *Booker*. *Washington*, 166 F. App'x at 830, 832-34.

### D. Resentencing on Remand

On remand, at their May 26, 2006 resentencings, the district court rejected Jackson's and Hines' arguments that the special jury verdict, this Court's remand, and *Booker* precluded it from finding facts that raised Jackson's offense level under the Sentencing Guidelines above twenty-six and that raised Hines' offense level under the Sentencing Guidelines above twenty-four. The district court explained that this Court had vacated Jackson's and Hines' sentences in *Washington* not because the district court had erred in finding facts that it then used to calculate the appropriate

5

Guidelines range but rather because, pre-*Booker*, the district court had treated the Guidelines as mandatory as opposed to advisory. Thus, the district court concluded that: (1) post-*Booker*, the special verdict meant only that the district court's sentence must not exceed the statutory maximum; and (2) this Court's decision in *Washington* did not preclude it from finding facts that placed Jackson's sentence for count one of the indictment within the statutory range of 10 years to life imprisonment and placed Hines' sentence within the statutory range of zero to twenty years.

The district court then resentenced Jackson and Hines, relying on the same evidence used to support its fact-finding about drug quantity and Jackson's leadership role at their original sentencings. It once again calculated the Guidelines range for Jackson to be 360 months to life, and once again sentenced him to 360 months' imprisonment. The district court once again calculated the Guidelines range for Hines to be 97 months to 121 months, and once again sentenced him to 97 months' imprisonment.

Jackson and Hines now appeal their most recent sentences.

**II.**

"Under this Circuit's post-*Booker* protocol, the sentencing court must: (1) correctly calculate the advisory guideline sentencing range, (2) consider the other [18 U.S.C.] § 3553(a) factors, and (3) impose a sentence that is sufficient but not greater than necessary to comply with the purposes of § 3553(a)(2)." *United States v. Lanesky*, 494 F.3d 558, 561 (6th Cir. 2007). Sentences imposed by the district court are reviewed by this Court for reasonableness. *See United States v. Rita*, 551 U.S. 338, ___, 127 S. Ct. 2456, 2459, 2465 (2007). "[A] sentence is unreasonable when the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed

in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Lanesky*, 494 F.3d at 561 (quoting *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)).

"[T]he district court's determination of the quantity of drugs attributable to a defendant for sentencing purposes" is reviewed for clear error.[2] *United States v. Jackson*, 470 F.3d 299, 310 (6th Cir. 2006). "[A] district court's decision concerning a defendant's role in an offense" is also reviewed for clear error. *United States v. Gates*, 461 F.3d 703, 709 (6th Cir. 2006).

Jackson and Hines both challenge their new sentences, arguing that (1) the district court incorrectly calculated their Sentencing Guidelines range by considering judicially found facts contrary to those found by the jury beyond a reasonable doubt, and (2) even if properly considered, those judicially found facts were clearly erroneous. We first consider whether the district court correctly calculated the advisory Guidelines sentencing range.

### A. The District Court Correctly Calculated the Advisory Guidelines Range at Resentencing

Hines argues that the district court used an improper Guidelines range at resentencing because it deviated from the law of the case established by this Court in his first appeal and calculated an advisory Guidelines range that improperly considered acquitted conduct. Jackson similarly argues that the district court improperly calculated the Guidelines range by relying on judicial fact finding rather than facts found by a jury beyond a reasonable doubt. Arguments similar

---

[2]"A factual finding is clearly erroneous when, though there is evidence to support that finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Ables*, 167 F.3d 1021, 1035 (6th Cir. 1999) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

to Hines' law-of-the-case and Jackson's and Hines' arguments about judicial fact-finding that deviates from facts found beyond a reasonable doubt in a special jury verdict were recently rejected by this Court in *United States v. Mendez*, 498 F.3d 423 (6th Cir. 2007) (per curiam).[3]

### 1. Law-of-the-Case Doctrine Not Implicated

Similar to the defendant in *Mendez*, Hines argues here that the law-of-the-case doctrine applies. Hines is mistaken. Under this doctrine, "findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation." *Mendez*, 598 F.3d at 426 (internal quotation marks and citations omitted). To determine whether the doctrine applies, the appellate court's decision "must be read against the backdrop of prior proceedings in the case." *Id.* (internal quotation marks and citation omitted). Just as in *Mendez*, "[a]lthough the remand order could have been clearer," we construe it as saying what the maximum base offense level should have been for Jackson and Hines "*under a mandatory Guidelines regime*," because that was what was "supported by a jury's beyond-a-reasonable-doubt factual findings." *Id.* "So read, this language says nothing about the appropriate range under the *advisory* Guidelines regime to be used by the district court at the post-*Booker* resentencing." *Id.*

### 2. Acquitted Conduct Was Properly Considered at Resentencing

---

[3]The holding in *Mendez* was recently upheld in an *en banc* decision. *See United States v. White*, ___ F.3d ___, ___, 2008 WL 5396246, at \*5 (6th Cir. Dec. 24, 2008)(*en banc*). In *White*, we held that "[s]o long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range." *Id.* at ___, 2008 WL 5396246 at \*3.

Hines next argues that the district court calculated an advisory Guidelines range that improperly considered acquitted conduct. Specifically, he asserts that, because the jury determined in the special jury verdict form that he did not possess more than 5 grams of cocaine base beyond a reasonable doubt, the district court cannot consider conduct on which he was acquitted to find otherwise. Although framed differently, Jackson also argues that the district court improperly engaged in judicial fact-finding post-*Booker*.

Similar arguments were rejected in *Mendez*. Relying on the Supreme Court's decision in *United States v. Watts*, 519 U.S. 148, 157 (1997), we observed that "this court has repeatedly held since *Booker* that sentencing courts may still find facts using the preponderance-of-the-evidence standard," "that *Booker* did not disturb *Watts*," and thus reasoned that "a post-*Booker* sentencing court may consider even 'acquitted conduct' if it finds facts supporting that conduct by a preponderance of the evidence." *Mendez*, 498 F.3d at 426-27.

> In *United States v. Watts*, the Supreme Court held "that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." 519 U.S. 148, 157 (1997). *Watts* preceded *Booker*, but this court has repeatedly held since *Booker* that sentencing courts may still find facts using the preponderance-of-the-evidence standard. *See United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006); *United States v. Coffee*, 434 F.3d 887, 897-98 (6th Cir. 2006); *United States v. Stone*, 432 F.3d 651, 654-55 (6th Cir. 2005) ("*Booker* did not eliminate judicial fact-finding. Instead, the remedial majority gave district courts the option, after calculating the Guideline range, to sentence a defendant outside the resulting Guideline range."). And in *United States v. Brika*, 487 F.3d 450, 458-60 (6th Cir. 2007), this court concluded after a thorough analysis that *Booker* did not disturb *Watts*, and therefore confirmed that a post-*Booker* sentencing court may consider even "acquitted conduct" if it finds facts supporting that conduct by a preponderance of the evidence.

*Id.* (footnote omitted). This Court's *en banc* decision in *White* acknowledges that "*Mendez* accords with the view expressed by our sister circuits that *Booker* did not alter the *Watts* position on acquitted conduct." *White*, ___ F.3d at ___, 2008 WL 5396246 at *2 (citing cases).

As we observed in *White*, it is not improper post-*Booker* for a district court to "to rely[] on acquitted conduct in applying an *advisory* Guidelines system." *Id.* at ___, 2008 WL 5396246 at *3. Rather, "[i]n the post-*Booker* world, the relevant statutory ceiling is no longer the Guidelines range but the maximum penalty authorized by the United States Code." *Id.* Because Jackson and Hines received sentences "below the statutory ceiling set by the jury's verdict, the district court [did] not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range." *Id.* In Hines' case, the "statutory ceiling" of 20 years "set by the jury's verdict" is well above Hines' actual sentence of 8 years, 1 month. *See* 21 U.S.C. § 841(b)(1)(C). In Jackson's case, the "statutory ceiling" of life imprisonment "set by the jury's verdict" is well above Jackson's actual sentence of 30 years. *See* 21 U.S.C. § 841(b)(1)(A).

The district court committed no error when it considered acquitted conduct on resentencing. "Taking acquitted conduct into account . . . is permitted for the limited purpose of determining the sentence for convicted conduct, which must be shown by a preponderance of the evidence." *White*, ___ F.3d at ___, 2008 WL 5396246 at *4. "[T]he district court's consideration of acquitted conduct in sentencing passes constitutional muster . . . insofar as enhancements based on acquitted conduct do not increase a sentence beyond the maximum penalty provided by the United States Code." *Id.* at ___, 2008 WL 5396246 at *5.

**B.      The District Court's Factual Findings Are Not Clearly Erroneous**

10

We now address Jackson's and Hines' arguments that the district court's factual findings about drug quantities and Jackson's leadership role were clearly erroneous. We begin with the district court's drug quantity findings as to Hines.

### 1. Quantity of Drugs Attributed to Hines

At Hines' resentencing, the district court considered counsel's arguments, relied on the same evidence presented at his original February 10, 2004 sentencing -- e.g. trial testimony, Jackson's statement to Agent Hayes, Edwards' post-trial affidavit, and testimony that both Edwards and Hines used co-defendant Calvin Merrell as a runner for small amounts of cocaine -- and reaffirmed the drug quantity findings made at Hines' original sentencing. Those findings are as follows.

First, as to the period between May 20, 2002 and June 13, 2002, there were several drug deliveries; some made by Hines and some by others. Because the evidence showed that Hines was involved at both the beginning and the end of this time period, the district court found all criminal activity of Edwards and Merrell during this time was reasonably foreseeable to Hines, thereby making him accountable for 13.46 grams of crack cocaine and 660 milligrams of powder cocaine. Second, none of drug quantities involved in July 2002 would be attributable to Hines. Third, considering Edwards' trial testimony and his post-trial affidavit, the district court attributed to Hines the one-half ounce of crack cocaine (14.17 grams) that Edwards testified he fronted to Hines because this testimony showed that they were still working toward a common goal. As to the one-half ounce of crack cocaine that Edwards testified he and Hines had obtained from Jackson and split, the district court attributed to Hines one-half of that one-half, or 7.09 grams of crack cocaine. Finally, based on Jackson's statement to Agent Hayes that Hines frequently purchased drugs from him and had

11

even done so as recent as a week ago, the district court found that, even if outside the conspiracy period, this was still relevant conduct under U.S.S.G. § 1B1.3(a)(2) and attributed Hines with 29 grams of powder cocaine. The district court thus determined that Hines would be attributed with 34.72 grams of crack cocaine and 29 grams of powder cocaine, thereby arriving at a base offense level under the Sentencing Guidelines of 30. (JA 902-906).

Hines challenges these findings, arguing that the district court failed to determine the scope of his agreement and improperly relied on Edwards' post-trial affidavit that conflicted with his trial testimony. Each of these arguments is addressed below.

### a.      District Court Did Determine Scope of Hines' Agreement

Hines first argues that, in calculating the drug quantity attributable to him, the district court improperly applied U.S.S.G. § 1B1.3(a)(1)(B)[4] and held him accountable for the conduct of others in the criminal drug conspiracy without first determining the scope of the criminal activity that Hines agreed to join. In *United States v. Campbell*, 279 F.3d 392, 400 (6th Cir. 2002), this Court held that § 1B1.3(a)(1)(B) "requires that the district court make *particularized* findings with respect to both

---

[4]U.S.S.G. § 1B1.3(a)(1)(B) provides that relevant conduct used to determine the Guideline range, includes:

(B)      in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility of that offense . . .

U.S.S.G. § 1B1.3(a)(1)(B).

12

the scope of the defendant's agreement *and* the foreseeability of his co-conspirators' conduct before holding the defendant accountable for the scope of the entire conspiracy." Contrary to Hines' arguments here, the district court satisfied these requirements.

First, the district court did not find Hines accountable for all of his co-conspirators' conduct during the entire April through November 2002 scope of the conspiracy. Rather, the district court made particularized findings that Hines was involved in the conspiracy to purchase and distribute cocaine both at the beginning and the end of the time period between May 20, 2002 and June 13, 2002, during which time several deliveries were made by Hines and others. Next, the district court found all criminal activity of co-conspirators Edwards and Merrell during this time to be reasonably foreseeable to Hines. The district court further found that, based on Edwards' trial testimony and his post-trial affidavit, that Edwards and Hines were still working towards a common goal of the criminal conspiracy at the time they split a one-half ounce of crack and at the time Edwards fronted another one-half ounce of crack to Hines.

In *Campbell*, this Court observed that the district court may infer the scope of a defendant's agreement "from the conduct of the defendant and others." *Campbell*, 279 F.3d at 400. That is what the district court did here. It examined the time period Hines was actively involved in the conspiracy, its common goal, and the conduct of Hines' co-conspirators that was reasonably foreseeable during that time period. The district court's findings as to the scope of Hines' agreement to participate in the charged criminal conspiracy are not clearly erroneous.

2.     **Edwards' Trial Testimony and Post-Trial Affidavit Are Consistent**

Hines also challenges the district court's attribution of any drug quantity based on Edwards' testimony that he and Hines had split a half ounce of crack cocaine that they had purchased from Jackson. In particular, Hines argues that the district court improperly relied on Edwards' affidavit averring that this occurred during the April through November 2002 time frame of the charged conspiracy (JA 159)[5] because it conflicts with his trial testimony (JA 295-298, 307-09, 333, 342-43, 346, 350-55). Hines misconstrues Edwards' trial testimony. Edwards testified that he did recall one instance where both he and Hines bought a half ounce of cocaine from Jackson that they split, but he could not recall the precise date. He admitted that he had previously told the government that he had purchased crack cocaine from Jackson in the summer of 2002. (JA 350). On cross-examination, Edwards testified that he dealt with Jackson in 2001 or 2002, that he could not give a precise date, but it was probably in the summer of 2002. (JA 353-54). Thus, the district court's finding that this drug transaction occurred during the time frame of the charged conspiracy is not clearly erroneous.

---

[5]In his December 17, 2003, post-trial affidavit, Edwards avers the following:

2.   From April through November 2002, I was involved with the purchase and distribution of cocaine base, commonly known as crack cocaine. During that time period, Marlos Hines and I purchased 1/2 ounce of crack cocaine from Nakeitha Jackson. Marlos Hines and I split the 1/2 ounce of crack cocaine.

3.   During the same time period, on at least one occasion, I "fronted" 1/2 ounce of crack cocaine to Marlos Hines. I gave Marlos the 1/2 ounce of crack cocaine without making him pay me for it first. Once he sold the crack cocaine, he was supposed to pay me for it. He never paid me for the crack cocaine. After that, I refused to provide crack cocaine to Marlos Hines unless he paid for it first.

(JA 159).

Hines also challenges the district court's attribution of any drug quantity based on Edwards' testimony that he also fronted Hines a half ounce of crack cocaine. In particular, Hines argues that the district court improperly relied on Edwards' affidavit averring that there was one instance where Edwards and Hines split a half ounce of crack cocaine that they purchased from Jackson and another instance where Edwards fronted Hines a half ounce of crack cocaine (JA 159) because it conflicts with his trial testimony (JA 296, 308-309). Contrary to Hines' argument here, there is no conflict with Edwards' testimony at trial and that in his post-trial affidavit. At trial, Edwards testified that he did not sell Hines any cocaine that he got from Jackson. When asked whether he bought crack cocaine from sources other than Jackson, Edwards replied that he did. He further testified that he never sold it to Hines but rather had fronted it to him one time. (JA 296). When asked specifically whether Jackson was a source for Hines, Edwards testified that there was only one time that he and Hines split some crack cocaine that Jackson supplied. (JA 308-309). Thus, the district court's findings attributing to Hines all of the drug quantity that he and Edwards purchased from Jackson (14.17 grams) and half of the drug quantity Edwards obtained from another source and fronted to Hines (7.09 grams) are not clearly erroneous.

## B.    Quantity of Drugs Attributable to Jackson

Jackson challenges the quantity of drugs that the district court attributed to him. In particular, Jackson argues that, although the district court is permitted to estimate the drug quantity to be attributed to him, U.S.S.G. § 2D1.1, cmt. n. 12 (2002), it improperly found a drug quantity here that is not supported by a preponderance of the evidence. Despite Jackson's arguments to the contrary, the drug quantity estimated by the district court and attributed to Jackson is supported by a preponderance of the evidence. There is no clear error.

15

At Jackson's original sentencing, the district court heard testimony from ATF Special Agent David Hayes, the individual to whom Jackson gave a statement after his arrest. Agent Hayes testified that he explained to Jackson at the outset of the interview that the grand jury had charged him with crack cocaine offenses; and consequently, the discussion was about crack cocaine. (JA 832-834, 837-38). Jackson admitted to Agent Hayes that he would usually pick up about nine ounces a week from his source in Nashville and bring it back to Russellville, Kentucky. Sometimes Jackson made more than one trip in a week. (JA 835). Jackson also discussed his prices. (JA 838). Agent Hayes asked Jackson about Marlos Hines (also known as "Frog") and Marcel Edwards ("Meat Grease"). Jackson admitted that he had dealt with Hines extensively, and that Hines had approached him about obtaining drugs within the last few days. (JA 836). Based on Jackson's statement to Agent Hayes, Agent Hayes's testimony, and testimony at trial, the district court found that Jackson was talking about crack cocaine in his statement to Agent Hayes and that Jackson possessed at least 1.5 kilograms of crack cocaine (thereby making his base offense level thirty-eight under the Sentencing Guidelines). (JA 861-65). The district court observed that the highest offense level under U.S.S.G. § 2D1.1 applied when a defendant's drug-trafficking offense involved 1.5 kilograms of crack cocaine. Thus, the court estimated, at the 9 ounces a week that Jackson said he usually picked up from his source, Jackson would have obtained 1.5 kilograms in six weeks and this would place him at an offense level of 38. (JA 861).[6] Moreover, the district court acknowledged, even if Jackson was obtaining powder cocaine from his Nashville source, the evidence showed that he had distributed crack cocaine. Thus, the district court found that Jackson had possessed 1.5 kilograms

[6]The district court rejected the substantially greater 11.2266 kilogram drug quantity set out in Jackson's Presentence Report ("PSR"). (JA 965, ¶ 55) (calculating 9 ounces purchased for 44 weeks as provided in Jackson's statement to Agent Hayes).

16

of crack cocaine during the time of the charged conspiracy, attributed that drug quantity to him, and determined that his base offense level would be 38. When re-sentencing Jackson, the district court relied on the same evidence, made the same findings, and arrived at the same conclusion. (JA 915-19, 930-32).

### C.      Leadership Role Attributed to Jackson

At his original sentencing, the district court found that Jackson was at least one of the leaders of the criminal activity set out in Count one of the indictment and that there were five or more participants involved. The district court thus applied a four-level enhancement to Jackson's sentence, pursuant to U.S.S.G. § 3B1.1(a).[7] (JA 861-65). Based on these findings, the district court calculated Jackson's offense level as forty-two and his criminal history category was six, placing him in a sentencing range under the Sentencing Guidelines of 360 months to life imprisonment. (JA 366, 870). When re-sentencing Jackson, the district court relied on the same evidence supporting its earlier finding about Jackson's leadership role, once again calculated the Guidelines range to be 360 months to life, and once again sentenced Jackson to 360 months imprisonment. (JA 915-19, 930-32).

---

[7]U.S.S.G. § 3B1.1provides that:

Based on the defendant's role in the offense, increase the offense level as follows:

(a)      If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

U.S.S.G. § 3B1.1(a) (2002).

Jackson argues that the district court erred when it attributed to him a leadership role in the criminal conspiracy and thus applied a four-level enhancement when calculating the Guidelines sentencing range. In making this determination, the district should consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

U.S.S.G. § 3B1.1, cmt. n. 4 (2002). Here, the evidence supports the district court's finding and four-level enhancement. Testimony from Agent Hayes, Jackson's statement, and trial testimony show that (1) Jackson frequently purchased large amounts of cocaine that he would then sell to "middlemen" in the Russellville, Kentucky area; (2) he sold the drugs he had purchased in varying amounts to Edwards, Johnson and Hines, who then delivered even smaller amounts to others; (3) Jackson set the price for the drugs offered for sale to Edwards, Johnson and Hines; (4) Edwards testified that Jackson's prices were often "too high," indicating that he claimed a right to a larger share of the fruits of the criminal activity; and (5) Jackson, Edwards, Hines, Johnson, and Merrell were all participants in the charged criminal activity. The district court's attribution of a leadership role to Jackson was not clearly erroneous.

## IV. Conclusion

For the foregoing reasons, we affirm Jackson's and Hines' sentences.